**FIREMAN'S FUND INSURANCE CO., INC., Plaintiff,**

v.

**SCHUSTER FILMS, INC., Defendant.**

**No. 89 Civ. 2531 (MBM).**

United States District Court, S.D. New York.

Jan. 29, 1993.

---

Kenneth D. Goldberg, Goldberg & Marin, New York City, for plaintiff.

Howard L. Mann, Donald A. Pitofsky, Schwartzman Weinstock Garelik & Mann, P.C., New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff seeks a declaratory judgment that it has no liability under the insurance policy it issued in 1982 to cover, among other hazards associated with production of a motion picture, the risk of damage to negative film. Certain negatives of the film, a 3–D rock musical epic that was to be entitled "Rock 'N Roll Hotel," were lost or destroyed at a processing facility, apparently in California.

The case is now before the court pursuant to a March 3, 1992 order that divided the issues between those triable to the bench and those triable to a jury. That order also provided that certain questions, including whether timeliness of notice of loss under the policy was raised as an issue by the pleadings, and whether notice could be untimely under the subject policy, would be tried based on papers submitted to the court. Since March 3, 1992 a dispute has arisen between the parties as to whether New York or California law controls, and that issue has been briefed as well.

For the reasons set forth below, it appears that timeliness of notice of loss was an issue raised by the pleadings, that New York law controls, and that notice can be untimely under the subject policy even absent a clause requiring timely notice. Further, although the reasonableness or not of notice was described in the March 3 order as a jury issue, this delay—16 months after defendant learned of the loss, which itself apparently occurred some two or three years before—was so lengthy that notice cannot be considered reasonable. Accordingly, judgment will be entered for plaintiff declaring that it has no liability for the subject loss, and dismissing defendant's counterclaims.

## I.

To the extent now relevant, the underlying facts either are not disputed or, if disputed, may be assumed in defendant's favor. In October 1982 plaintiff issued a three-part policy that included, as Section IIIA, coverage for loss of negative film. (Pl. Ex. 2, Sec. IIIA) That policy was issued in California based on an application submitted to a California insurance broker by a New York corporation styled Rock Fantasy Corp., apparently a predecessor of defendant and located at the same address as defendant. (Mann 5/22/92 Aff.Ex. 3; *compare* Def.Ex. 88, showing same ad-

dress for defendant) The application disclosed that the motion picture, a "story about 3 kids who want to be rock stars," would be filmed during six weeks in Richmond, Virginia and at unspecified "Locations," and that the "[l]aboratory to be used," presumably to process the film, would be "Movielab—LA," meaning the Movielab facility in Los Angeles. (Mann 5/22/92 Aff.Ex. 3) Among its general conditions, applicable to all sections, the policy included the following:

### I. TERRITORIAL LIMITS

This policy applies to productions filmed anywhere in the world subject to additional premium with rates to be agreed upon with respect to all productions filmed outside of the United States or Canada.

### IV. TIME LIMITATIONS—SUIT AND NOTICES

.... Where any limitation of time for ... notices of any matter by the Insured is set forth in this policy, but such limitation of time is prohibited by the laws of the state wherein this policy is issued then and in that event, the time for suit or the time for notice shall be limited to the shortest period permitted under the laws of such state.

(Def.Ex. 2)

Section IIIA, which contained the coverage for the disputed loss, included no provision specifying the time for notice to plaintiff that a loss had occurred, or indeed requiring notice at all. That section was the only one extended to be in effect at the time the footage in question apparently was lost. Nor does the policy contain a choice of law clause.

Principal photography began in October 1982 and continued into January 1983, when the producers ran out of money and ceased production until they could raise additional funds. By then, about 140,000 feet of film had been shot, of which some 38,000 were processed and stored at Movielab in or about December 1982, and the remaining 102,000 at Technicolor in New York. (Mann 5/22/92 Aff. ¶¶ 3, 4, 6, 7; Def.Ex. 90) Although defendant argues that the film in Movielab's custody was processed and stored in California, the contract with Movielab discloses that that company had offices in New York as well and the contract called for the application of New York law; some testimonial evidence suggests, albeit tentatively at most, that the missing footage may have been stored and lost in New York. (Def.Ex. 88; Def. Ex. 96 at p. 205) The producers raised additional funds in 1985, and continued filming in December 1985 and January 1986. (Mann 5/22/92 Aff. ¶ 5)

In or about February 1986, when those involved in the project sought to assemble and edit the footage that had been shot, and thereby to create a motion picture, they discovered that Movielab had lost or destroyed the 38,000 feet of film that had been processed and stored there. (Mann 5/22/92 Aff. ¶ 7) Defendant first notified plaintiff of the loss in a letter from its counsel dated June 23, 1987. That letter stated that the loss had occurred "in or about June 1983." (Def.Ex. 43) Defendant's president, Howard Schuster, testified as follows about the cause of the approximately 16-month delay between the discovery of the loss and the notice to plaintiff:

Q. Why did you wait so long?

A. I didn't want to wait, but the attorney that I was using at the time did not focus on the problem. I owed him money, and he just did not really get into it until I eventually, in frustration, contacted Howard Mann, and he got involved in the project at another law firm, and he started to see what he could do for us.

(Def.Ex. 76)

### II.

Defendant claims that promptness of notice of loss was not an issue raised by the pleadings, and therefore cannot be raised by plaintiff at this time. Paragraph SEVENTH of the complaint herein reads as follows:

On or about July 7, 1987, defendant, SHUSTER [sic] FILMS, INC., by its attorneys, placed Albert G. Rubin and Company, Inc., broker for plaintiff, on

notice, that SHUSTER [*sic*] FILMS, INC. had allegedly sustained the loss of some 38,000 feet of film relative to the motion picture "Rock Fantasy" a/k/a "Rock & Roll Hotel", which footage had been processed on or about and between October 19, 1982 and October 27, 1982. Pursuant to said notice, counsel for defendant indicated that the loss was not discovered "until some time in 1986."

The complaint itself, as mentioned, seeks a declaration that plaintiff has no obligation to insure the loss. In its answer, defendant denied the allegations in the quoted paragraph and stated,

> that pursuant to letters dated June 22, [*sic*] 1987 (annexed hereto as Exhibit A) and July 9, 1987 (annexed hereto as Exhibit B), defendant put plaintiff on notice of a claim under Policy No. MPT3591243 (the "Policy") of a total loss in the approximate amount of $5,000,000.

(Answer and Counterclaim, ¶ 2) Thus, in the complaint, plaintiff described defendant's delayed notice and demanded to be relieved of any obligation to pay; defendant denied plaintiff's allegations in its answer and counterclaims, stated that it had "put plaintiff on notice" of its claim, and demanded to be paid. That plaintiff did not use the word "untimely" or defendant the word "timely" in describing these events does not mean that the pleadings do not raise the issue.

If there were any doubt on the subject, it would be resolved by the fact that the parties conducted discovery on the issue, including the testimony from plaintiff's president quoted above.

■ Defendant claims also that the complaint is inadequate for failure by plaintiff to plead with particularity defendant's failure to comply with a condition precedent to coverage—timely notice—allegedly in violation of Fed.R.Civ.P. 9(c). That Rule reads as follows:

> (c) **Conditions Precedent.** In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence

shall be made specifically and with particularity.

The second sentence of that Rule applies to a defendant's denial of performance of a condition precedent in response to a plaintiff's general averral that all conditions precedent have been complied with. That Rule does not require this plaintiff to have pleaded defendant's non-performance any more specifically than it did. *Zingalie v. United States Corporation,* 1991 WL 487443, 1991 U.S.Dist. LEXIS 19365 (W.D.N.Y.1991). If defendant here, in its counterclaims, had alleged generally that it complied with all conditions precedent, that would have imposed on plaintiff, in its reply, the burden of specifying in what respect a condition precedent was not complied with, perhaps by giving a name to conduct already described in the complaint. However, defendant's counterclaims did not refer to performance of conditions precedent, but asserted instead only that defendant "has substantially complied with the terms and conditions of the Policy and is, therefore, entitled to recover the sum of $3,000,000."

The simple truth is that throughout this case both parties have known what facts and legal issues were in dispute here, and that timeliness of notice was among those issues.

### III.

■ Because New York is the forum state, I am bound by New York choice of law principles. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Bader v. Purdom,* 841 F.2d 38, 39 (2d Cir.1988). Those principles require that "'the law of the jurisdiction having the greatest interest in the litigation will be applied.'" *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (1985) (citation omitted). The procedure is to follow the law of the jurisdiction which has the most significant contacts with the matter in dispute, weighing the interests of the states whose law may be applied and the intent of the parties. *Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1954); *see Fleet Messenger Serv., Inc.*

*v. Life Ins. Co.,* 315 F.2d 593, 596 (2d Cir.1963) (applying *Auten* rule in insurance contract case).

■ Plaintiff urges that New York law should control; defendant maintains that California law governs. The difference between New York and California law is material here because, as set forth more extensively below, even absent a specific notice clause in the policy, New York requires as a condition precedent to coverage that an insured give notice of loss within a reasonable time, with no obligation on the insurer to claim or prove prejudice from delay. By contrast, California requires that an insurer asserting it received late notice show prejudice before it may deny coverage based on late notice. *See* p. 985, *infra.*

■ Here, the intent of the parties, insofar as it might be discerned, would be one factor to consider, but it would not be dispositive; even if there were an explicit choice of law clause, it would not control the outcome. *See Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 52 (2d Cir.1984) (citing cases). Here, the intent of the parties is not apparent from the record. Although defendant relies heavily on the disclosure in the application that the film would be processed at Movielab's facility in Los Angeles, and on the issuance of the policy from California by a California agent for an insurance company incorporated in that state, those facts do not nearly establish that the parties intended California law to apply. The policy was issued to cover several risks associated with movie production, not just film loss, and provides in General Condition I, quoted above, that it insures risks in any location. The application shows that activity was to go on in various locations, including Virginia, New York and California. The record discloses that most of the film was developed in New York, apparently without anyone feeling the need to notify the insurance company that a developing facility in addition to the one mentioned in the application was being used. At most, the application appears to have been intended to inform the company of whether the risks it was insuring were centered in one location. They were not, and the policy itself did not confine coverage to any particular location.

Moreover, the policy contains General Condition IV, also quoted above, with respect to time limits for giving notice, which provides for the contingency that the law of some unspecified jurisdiction might govern the contract, and directs that plaintiff receive the benefit of the shortest notice period applicable under the law of that jurisdiction.

In sum, the record developed here shows nothing probative of the parties' intent as to governing law.

The parties have not argued explicitly the interests of New York and California. Rather, each side has set forth a laundry list of contacts between the underlying events and one state or the other, and asked me to conclude that the interest of that state is superior. Thus defendant lists what purport to be nine significant contacts with California, but which turn out to be both fewer and of lesser significance than defendant urges. Those purported contacts are the following (emphasis in original):

1. The Policy was issued based upon an insurance application that disclosed that the motion picture negative would be processed and stored in *California.*

2. The insured risk (*i.e.,* the film negative for "ROCK N' ROLL HOTEL") was located in *California.*

3. Movielab's film laboratory was located in *California.*

4. The loss occurred in *California.*

5. The Portfolio Motion Picture Policy was issued in *California.*

6. The insurance broker by whom the policy was placed on behalf of FIREMAN'S FUND was located in *California.*

7. FIREMAN'S FUND is a *California* corporation and its principal offices are located in *California.*

8. The Portfolio Motion Picture Policy is a *California* form of insurance policy and was obviously drafted with the intent that *California* law would apply.

9. *California's* interest in determining the liability of a California form of insurance policy, placed and issued in California with respect to a loss of property which occurred in California, is clearly superior to any interest New York may be said to have in this litigation.

(Def.Mem. p. 8) Items 1 and 8 both deal with the issue of what the parties intended. Items 2, 3 and 4 are variations on the same fact: the film in question allegedly was lost in California. Items 5 and 6 are the same, inasmuch as the policy could not have issued itself and must have been issued by a broker in the state where it was issued. Item 9 is not a description of a contact but rather of defendant's conclusion from a reprise of the other contacts it has listed.

Thus, what is presented as nine items boils down to four: the parties allegedly intended to apply California law; the loss occurred in California; the policy was issued in California; defendant is a California corporation.

Not to be outdone, plaintiff lists 17 contacts between the underlying events and New York. It is sufficient for current purposes to note that when one eliminates such make-weights as that defendant paid the insurance premium with a check sent from New York and drawn on a New York bank account (Def.Mem. p. 16), plaintiff's list of 17 contacts shrinks to three: Schuster is a New York corporation based in New York; some activity in connection with the insured production took place in New York; the loss conceivably might have occurred in New York, where Movielab also has a facility (Def.Ex. 88) and where some of the missing footage may have been processed or stored. (Def.Ex. 96 at p. 205)

The parties' listing of contacts illuminates only slightly the issue at hand, which is to determine which state has the more significant interest in this dispute. Although it is true that courts often consider some of the kinds of contacts listed by the parties, they do so not in a mindless scavenger hunt to see which state can be found to have more contacts, but rather in an effort to detect and analyze what interest the competing states have in enforcing their respective rules. *See Olin Corp. v. Ins. Co. of North America,* 743 F.Supp. 1044, 1049 (S.D.N.Y.1990), *aff'd,* 929 F.2d 62 (2d Cir.1991) (noting that "New York courts have looked principally to the following factors: the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business.") (citations omitted).

■ The factors listed in *Olin* suggest four possible state interests that may be engaged when an insurance contract is written, interests that must be examined later when that contract becomes the subject of a case. One is the interest of the state where the principal risk is located, if there is one such state, in regulating conduct with respect to insured risks within its borders. Another is the interest of a state in defining the protection that it will afford to insureds within its borders in making claims against their insurers, whether those insurers are located within or without the state. A third, related in some ways to the second, is the interest of a state in having insurance available to its citizens from companies located both within and without the state. A fourth is the interest of a state in regulating insurers doing business within its borders.

■ Those four factors suggest that New York has a stronger interest than California in applying its law to the insurance contract at issue here. The contract was delivered to a New York insured and covered risks not limited to any principal location but including risks in New York. Although plaintiff is a California corporation and a California agent issued the policy, Fireman's Fund is a company that does business throughout the nation, including in New York. At least the first three of the four interests identified above weigh in favor of New York, where the insured was located, where at least a portion of the risk was centered, and where the manner in which claims may be made against insurers will affect whether and on what terms insurance is made available to New York

citizens. The fourth interest, that of a state in regulating insurers doing business within its borders, weighs equally in favor of New York as the state where the insured and some of the risks were located, and California, where the policy was written.

This balance of interests in favor of New York may explain why, in analogous cases, courts in New York have held that policies covering risks throughout the country or the world, delivered to insureds in particular states, should be covered by the laws of those states. Thus, *Regional Import & Export Trucking Co. v. North River Ins. Co.*, 149 A.D.2d 361, 362, 539 N.Y.S.2d 940, 941 (1st Dep't 1989), held that "a policy delivered to a New Jersey corporation to insure against a loss occurring 'anywhere' should be subject to the law of that state, irrespective of the presence of the insured's agent in the State of New York."

 *Olin* illustrates that the applicable law must become fixed at the time the contract is formed. In that case, the policy was delivered to a New York insured to cover risks not confined to any particular location, and was held governed by New York law even though the insured later moved to Connecticut and the principal economic effect of granting or denying coverage would be felt there. Chaos would result if the law governing insurance policies changed based on such fortuitous circumstances as a change in residence of the insured.

In *Fleet Messenger Serv.*, 315 F.2d at 596–97, the Second Circuit applied New York law to determine the effect of misrepresentations by an insured in an application for an insurance policy, notwithstanding that the application was made in New Jersey, the insurer was located in Pennsylvania, and the policy required notice in Pennsylvania. The Court found that the filing of the application in New Jersey was based on the fortuity that the insurer was not licensed to do business in New York. It found also that the issue to be resolved— the effect of an insured's misrepresentations on the beneficiary's right to recover— particularly engaged New York's interest

in applying its law, which was "harder on beneficiaries" than the law of Pennsylvania, where the insurer was based. *Id.* at 597.

New York's superior interest is confirmed when, as explained below, one examines the particular issues in dispute here: how promptly an insured must give notice of loss and whether an insurance company must show prejudice before denying coverage because of late notice.

California cases long have held that before an insurer may rely on failure to give timely notice as the basis for denying coverage, it has the burden of asserting and proving prejudice from such failure. *See Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978); *Campbell v. Allstate Ins. Co.*, 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963) (citing cases). California's interest in such a rule is obvious—namely, to protect California insureds who wish to assert claims against insurance companies. *See Ins. Co. of Pennsylvania v. Associated Int'l Ins. Co.*, 922 F.2d 516, 523 (9th Cir. 1990) (citing cases and explaining rationale of requiring a showing of prejudice). That interest is not engaged in this case. Defendant is a New York entity.

By contrast, even "where an insurance contract is silent, New York law will imply an obligation to notify the insurer within a reasonable period of time." *Olin, supra,* 743 F.Supp. at 1051 (citations omitted). Thus, the answer to the question of whether notice under this policy can ever be untimely, even absent a specific notice provision, is yes.

Moreover, "[u]nder New York law, an insured's failure to comply with a notice-of-occurrence provision is generally a complete defense even if the insurer was not prejudiced by the untimely notification." *Olin Corp. v. Ins. Co. of North America*, 966 F.2d 718, 723 (2d Cir.1992) (citations omitted) "Absent a valid excuse, a failure to satisfy the notice requirement vitiates the policy .., and the insurer need not show prejudice before it can assert the defense of noncompliance." *Security Mut. Ins. Co. v. Acker–Fitzsimons Corp.*, 31

N.Y.2d 436, 440, 340 N.Y.S.2d 902, 905, 293 N.E.2d 76, 78 (1972) (citations omitted). The Second Circuit explained the rationale for that New York rule as follows:

> Notice-of-occurrence provisions allow insurance companies to make an early investigation into the particular circumstances of an occurrence, both as an aid to future litigation and as a means of ending or correcting dangerous conditions. Additionally, timely notice of occurrence assists insurers in estimating the amount of capital they need in reserve for future claims, and the amounts they must charge as premiums. Finally, these provisions aid insurers in the detection of fraudulent claims.

*Olin,* 966 F.2d at 723.

New York's interest in enforcing that rule promotes diligence by its insureds and thereby encourages insurance companies both within and without the state to provide insurance to New York residents. Nor is there any discernible California policy that would be offended by enforcing the New York rule here; California has no interest in making its insurance companies conform elsewhere to a standard they must meet when dealing with California insureds.

### IV.

 Here, the delay of 16 months after defendant learned of the loss is facially unreasonable. The passage of some two or three years from the actual loss to defendant's discovery of the loss certainly did not lessen the exigency of notifying plaintiff. Under New York law, plaintiff was entitled to know as early as reasonably possible of the potential loss so that it could investigate before time obliterated evidence that had already been substantially dimmed, and so that it could at least adjust its reserves. One need not define precisely what a reasonable time would have been in these circumstances to conclude that 16 months cannot be considered reasonable.

 The reported cases abound with instances in which comparable or lesser periods have been considered unreasonable.

*See, e.g., Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.,* 748 F.2d 118, 121 (2d Cir. 1984) (six months); *Acker–Fitzsimons Corp., supra* (19 months); *Power Authority of New York v. Westinghouse Elec. Corp.,* 117 A.D.2d 336, 339–40, 502 N.Y.S.2d 420, 421–22 (1st Dep't 1986) (53 days) (citing cases). Although the question of reasonableness of notice was anticipated to be a jury issue, "where there is no excuse for the delay and mitigating considerations are absent, the issue may be disposed of as a matter of law in advance of trial." *Westinghouse Elec. Corp.,* 117 A.D.2d at 339–40, 502 N.Y.S.2d at 422.

In this case, defendant has offered no excuse for the delay beyond the possible dereliction of counsel who had not been paid and "just did not really get into it." (Def.Ex. 76, *supra* p. 4) The failure of counsel to "get into it" is not an adequate excuse for a delay in notifying an insurance company. *Cf. C.F.C. Realty Corp. v. Empire Fire and Marine Ins. Co.,* 110 A.D.2d 508, 487 N.Y.S.2d 47 (1st Dep't 1985) (failure of counsel to submit timely proof of loss bars recovery).

For the above reasons, judgment will be entered for plaintiff and defendant's counterclaims will be dismissed. Settle judgment on ten days' notice.

SO ORDERED.