STATE FARM FIRE AND CASUALTY COMPANY, Appellant,

v.

P. W. HERRON, Appellee.

No. 7872.

United States Court of Appeals Fourth Circuit.

Argued June 19, 1959.

Decided Aug. 6, 1959.

**422**

———◆———

Thomas B. Butler, Spartanburg, S. C. (Butler & Chapman, Spartanburg, S. C., on brief), for appellant.

Harry DuMont, Asheville, N. C. (Walker & White, David N. Wilburn, Jr., Mike S. Jolly, Union, S. C., Fred N. Sigman, Jr., and Uzzell & DuMont, Asheville, N. C., on brief), for appellee.

Before HAYNSWORTH, Circuit Judge, and BARKSDALE and BRYAN, District Judges.

BARKSDALE, District Judge.

From a judgment of $4,000, the full amount of its fire insurance policy, rendered by the court sitting without a jury, against it and in favor of the insured, P. W. Herron, State Farm Fire and Casualty Company has prosecuted this appeal. The court made findings of fact, which should not be set aside by this court unless clearly erroneous. F.R. Civ.P. 52(a), 28 U.S.C.A. Notwithstanding the admonition of the rule, a careful perusal of the evidence leads us to the conclusion that the district court's findings of fact in some important particulars cannot be sustained.

Viewed in the light most favorable to the insured, the evidence discloses that in 1943, Herron bought an abandoned church near Union, S. C., for $1,500, remodeled it into a four-room dwelling house at a cost of $1,500, and moved into it. Between 1943 and 1956, he made a nine-room house of it, at an additional cost of $6,000. In 1953, he procured a policy of fire insurance from South Carolina Insurance Company in the sum of $2,000. No more insurance was taken on the house until August 9, 1956, on which date Herron procured an additional $2,000 of coverage from the agent of the South Carolina Insurance Company, at Union, S. C. Thirteen days later, on August 22, 1956, Herron procured from the agent of defendant at Union, the policy here in controversy, in the sum of $4,000. Herron told State Farm's agent that he wanted "additional insurance" in the amount of $4,000. Herron signed a written application for this insurance, which recites that there was no other insurance on the property. However; this application, on a form, was filled out by State Farm's agent and Herron denied that he knew such a statement was contained in the application. The application gave the "Insurable Value" of the policy as $6,000 in one place and as $5,000 in another. As his reason for not procuring the desired additional $4,000 of insurance from the South Carolina Insurance Company agent at Union, Herron said that he liked to spread his business around. On this application, State Farm's agent at Union issued the policy in suit, and the policy provided amongst other things:

> "Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto."

Also, in the "Valuation Clause", insurer and insured agreed that the value of the insured building was $4,000. A year or two prior to the fire which destroyed the insured dwelling, Herron listed it for sale with a real estate agent at the price of $4,500. However, Herron testified that, after such listing of the property for sale, he spent approximately "between four and five thousand dollars" in making improvements on the dwelling.

About 3:00 o'clock A. M., on Thursday, September 20, 1956, the insured dwelling house was totally destroyed by fire of unknown origin, it being then unoccupied. During the late afternoon of that same day, Herron, the insured, Wade, defendant's agent who had issued the policy here in suit, and Layton, an insurance adjuster who handled this claim for State Farm, met on the premises. Both Wade and Layton testified that on this occasion Layton asked Herron if he had any other insurance on his house, and that Herron replied that he did not. Herron did not deny telling Layton he had

no other insurance, but said he did not recall it. When Wade reported the fire to his company on that same day, he reported that there was no other insurance on the risk. On Saturday, September 22, 1956, Layton filled out the front side of a proof of loss form showing that the total amount of insurance upon the property at the time of the loss was $4,000, and mailed it to Herron at his Asheville, N. C., address, Herron having previously moved out of the insured dwelling, with a form letter of enclosure to which he appended:

"Please sign proof of Loss *before a Notary Public* and return to me and I will submit Claim to Company for their consideration—"

At that time neither Layton nor Wade knew of any other insurance on the property. Upon receipt of Layton's letter with enclosures on Monday, September 24, 1956, Herron took the letter and proof of loss with the State Farm Insurance Company policy here in controversy, together with an endorsement showing the increased coverage of his South Carolina Insurance Company Policy and a proof of loss to be sent to that company, to an attorney, Fred N. Sigman, Jr., at his office in Asheville. Notwithstanding the fact that both Herron and Sigman knew of the South Carolina Insurance Company policy on the same property, Sigman had Herron subscribe and swear to the proof of loss sent Herron by Layton, reciting that there was no other insurance, and it was returned to Layton that same day. On the same day, Herron and Sigman completed a proof of loss and sent it to the South Carolina Insurance Company. Whether or not it disclosed the fact of other insurance, does not appear. It does appear that South Carolina Insurance Company has never paid the loss and that Herron has brought suit in a state court on its policy. It does not appear from what source he learned it, but Layton testified that he learned of the other policy of insurance "Probably the early part of the next week. Maybe, Monday or Tuesday of the next week." When about a month had elapsed, with

nothing being heard from Layton by either Herron or Sigman, Sigman telephoned to Layton to inquire the reason for the delay and for the first time advised Layton of the existence of the South Carolina Insurance Company policy. Sigman was told by Layton that "the reason there had been a delay in this thing was because the General Adjustment Bureau who represented the South Carolina Insurance Company and his bureau had given this case under advisement to the National Fire Bureau and they were investigating it from an arson standpoint, and that was the reason for the delay." Pursuant to his telephone conversation with Sigman, on October 23, 1956, Layton returned to Herron the proof of loss which he had signed and sworn to on September 24, 1956, the reverse side of which had never been filled out, together with a blank form of proof of loss, stating in the latter that the South Carolina law requires that the assured fill out the proof. Although at that time Layton, Herron and Sigman all knew of the existence of the other insurance, Herron and Sigman did not use the blank form of proof of loss sent Herron by Layton and truthfully set out the existence of the other insurance policy; Herron, with the advice and approval of his attorney, Sigman, simply answered the questions on the reverse side of the original proof of loss dated September 24, 1956, and returned it to Layton, making no change in the original sworn statement that the State Farm insurance was the only insurance on the property.

Thereafter, State Farm's counsel wrote Herron, enclosing a check for the return of his premium, and denying liability by reason of Herron's false statements that there was no other insurance and this suit followed. It is our conclusion that the district court erred in rendering judgment against the insurance company, and its decision must be reversed.

█ It is obvious that the existence or non-existence of other insurance on the same building is a material fact. Although Herron signed the application for the insurance policy here in controversy,

containing the false statement of fact that, there was no other insurance on the property, under the circumstances it cannot be held as a matter of law that this was a wilful misstatement of a material fact rendering the policy void *ab initio*. Although Wade, State Farm's agent, testified that he inquired of Herron whether or not he had any other insurance on his property and Herron answered that he did not, although he undoubtedly knew that he had, Herron testified that he told the agent that he "wanted some additional insurance" on his property, and as on the conflict Herron's testimony must be taken as true, his request for "additional insurance" must be considered as sufficient to relieve him of liability for making a wilful misstatement. Likewise, both Layton, the adjustor, and Wade, the agent, testified that when they met Herron at the scene the afternoon of the fire, Layton asked Herron if he had any other insurance and he replied that he did not. It also appears as corroboration of Wade's testimony that in reporting the fire to State Farm that same day, he reported that there was no other insurance. Herron did not deny this conversation, but he did testify that he did not recall it. There can be no doubt that Herron on this occasion knew he had other insurance, but if Herron's statement that he did not recall this conversation be treated as a denial, he cannot be held guilty of a wilful misrepresentation on that occasion. However, the policy provides:

"This entire policy shall be void if, *whether before or after a loss*, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." (Italics supplied.)

In the case of De Shields v. Insurance Company, 125 S.C. 457, 118 S.E. 817, 821, a case involving a false statement in the proof of loss as to other insurance, the court said:

"Generally speaking, to avoid a policy for false swearing in the proofs of loss, 'the false statements must have been made intentionally and willfully'—must have been made, according to perhaps the greater weight of authority, 'with intent to deceive and defraud' and 'must be material'. 26 C.J. 383, § 493; 14 R.C.L. 1343; note 52 L.R.A.,N.S., 453."

When Herron signed and swore to the proof of loss in his attorney's office on September 22, 1956, and returned it to Layton, the adjustor, as a matter of law, the conclusion seems to us inescapable that his false statement that there was no other insurance was made intentionally and wilfully and with the intent to deceive or defraud the appellant insurance company. It is true that this proof of loss had been filled out by Layton, the adjustor, but there is absolutely no conflict in the evidence as to the fact that, when Layton filled out this proof of loss on September 22, 1956, he did not know that there was other insurance on the burned dwelling. When Herron signed and swore to the false statement that there was no other insurance, both he and his attorney then and there present, did know there was other insurance, because they had in their possession on this occasion the South Carolina Insurance policy, and on the very same occasion, filled out and sent to the South Carolina Insurance Company a proof of loss under its policy. The district judge seems to have set great store on the fact that this proof of loss was filled out by appellant's adjustor and that after Herron signed it, the adjustor "accepted it", but he seems to have overlooked the fact that at that time Layton, the adjustor, had no knowledge of the existence of the South Carolina Insurance Company's policy.

There was no "acceptance" of this proof of loss by appellant's adjustor Layton so as to constitute a waiver. It is true that he received it, but upon its receipt he did quite the opposite of ac-

cepting it, in the sense of waiving any irregularity: on the contrary, he, with the adjustor for the South Carolina Insurance Company, turned their proofs of loss over to the National Fire Bureau so that this bureau might investigate the situation "from an arson standpoint".

Neither did the adjustor waive any right of the company when he returned the proof of loss to Herron on October 23, 1956. On that occasion, he returned the proof of loss form which he had filled out, together with a blank form, for the use of Herron and his attorney with the advice that South Carolina law required that the assured fill out the proof of loss. Herron, acting on the advice of his attorney, chose not to use the blank form and make a truthful statement. On the contrary, they, in effect, reaffirmed the false statement, and the company then properly denied liability.

In the case of Globe & Rutgers Fire Insurance Co. v. Stallard, 4 Cir., 68 F.2d 237, at page 240, from the Western District of Virginia, Judge Parker, speaking for the court, clearly set out the general rules of law applicable here:

" * * * One of the defendant's exceptions is that the court refused to give the jury the following instruction:

" 'The defendant insurance company is entitled to demand of an insured the utmost good faith in all dealings, including the furnishing of sworn proofs of loss, and accordingly, if you believe from the evidence and the circumstances shown by the evidence, that W. L. Stallard, in his sworn proof of loss to the defendant, knowingly and wilfully overestimated or over-valued the cash value at the time of the fire of the buildings insured and destroyed, or the amount of loss and damage thereto, such acts on his part defeat the right of plaintiffs to recover, and you should find for the defendant, and this is true regardless of whether he furnished such proof of loss within or after the period of sixty days after the fire.'

"This was a substantially correct statement of the law. The policy is avoided not only for fraud, but also for false swearing by the insured touching any matter relating to the insurance or the subject thereof, 'whether before or after a loss.' If the condition were against fraud alone, the argument as to reliance by the company might be pertinent; but the condition against false swearing is broken when a false oath is knowingly and wilfully made by the insured as to any matter material to the insurance or the subject thereof. It is said in some of the cases that the same must be made with intent to deceive or defraud. 26 C.J. 383, 384; Fidelity-Phenix Fire Ins. Co. of New York v. Benedict Coal Corporation, 4 Cir., 64 F.2d 347, 352; National Fire Ins. Co. of Hartford, Conn. v. Renier, 7 Cir., 22 F.2d 671. But, as pointed out by the Supreme Court of the United States in Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 95, 97, 3 S.Ct. 507, 515, 28 L.Ed. 76, the intent to deceive and defraud is necessarily implied in the intentional and willful making of a false statement as to a material matter. In that case the court said:

" 'No one can be permitted to say, in respect to his own statements upon a material matter, that he did not expect to be believed; and if they are knowingly false and willfully made, the fact that they are material is proof of an attempted fraud, because their materiality, in the eye of the law, consists in their tendency to influence the conduct of the party who has an interest in them, and to whom they are addressed. 'Fraud', said Mr. Justice Catron, in Lord v. Goddard, 13 How. 198, 14 L.Ed. 111, 'means an intention to deceive'. 'Where one', said Shepley, C. J., in Hammatt v. Emerson, 27 Me. 308–326, 46 Am.Dec. 598, 'has made a false representation, knowing it to be false, the law

infers that he did so with an intention to deceive.' 'If a person tells a falsehood, the natural and obvious consequence of which, if acted on, is injury to another, that is fraud in law'. Bosanquet, J., in Foster v. Charles, 7 Bing. 105; Polhill v. Walter, 3 Barn. & Ad. 114; Sleeper v. New Hampshire Fire Ins. Co., 56 N. H. 401; Leach v. Republic Fire Ins. Co., 58 N.H. 245 * * *."

The law of South Carolina is in accord with the general rule as shown by De Shields v. Insurance Company, supra; Orenstein v. New Jersey Insurance Company, 131 S.C. 500, 127 S.E. 570, holding that wilful false swearing by the insured in a proof of loss would constitute a forfeiture of his insurance, and Orenstein v. Star Insurance Company, 4 Cir., 10 F.2d 754, 757, a decision of this court in which Judge Parker, speaking for the court, quoted the general rule as follows:

"An estimate of the value of insured property by the insured in his proofs of loss will not constitute a fraud if he places the amount too high through inadvertence or mistake, but a wilfully false and fraudulent valuation of the property destroyed will of course avoid the policy. 14 R.C.L. 1344."

It is true that the question of wilful fraud is ordinarily one for the trier of fact, but in this case, the evidence viewed in the light most favorable to the insured, shows wilful misrepresentation with the intent to deceive so plainly that it becomes a matter of law. See Cuetara Hermanos v. Royol Exchange Assur. Co., 1 Cir., 23 F.2d 270, certiorari denied 277 U.S. 590, 48 S.Ct. 437, 72 L.Ed. 1002.

When Herron sought the advice of counsel on September 24, 1956, before signing and swearing to State Farm's proof of loss containing the false statement that there was no other insurance, he took with him and delivered to his attorney, Sigman, both his State Farm policy and the endorsement dated August 9, 1956, of his South Carolina Insurance Company policy (the policy having been lost), showing the increase of coverage from $2,000 to $4,000, these documents showing plainly that both these policies were "agreed value policies", the agreed value of the building in each policy being $4,000. The South Carolina statute in regard to agreed value fire insurance policies is as follows:

"Maximum amounts of policies; stated values; company contributions. No company writing fire insurance policies, doing business in this State, shall issue a policy for more than the value stated in the policy or the value of the property to be insured, the amount of insurance to be fixed by the insurer and insured at or before the time of issuing the policy. In case of total loss by fire the insured shall be entitled to recover the full amount of insurance and in case of a partial loss the insured shall be entitled to recover the actual amount of the loss, but in no event more than the amount of the insurance stated in the contract. But if two or more policies are written upon the same property they shall be deemed and held to be contributive insurance and if the aggregate sum of all such insurance exceeds the insurable value of the property, as agreed by the insurer and the insured, each company shall, in the event of a total or partial loss, be liable for its *pro rata* share of insurance. Nothing in this section shall be held to apply to insurance on chattels or personal property." 1952 Code of Laws of South Carolina, Section 37–154.

The fact that Herron and Sigman, his attorney, had in their possession State Farm's policy and the South Carolina Insurance Company's endorsement, each showing $4,000 as the agreed valuation of the same dwelling and insurance coverage of the same amount by each company, is a most cogent circumstance leading us to the conclusion that Herron's conduct in signing and swearing to State Farm's proof of loss containing the statement that there was no other insur-

ance, was wilful and intended to deceive State Farm. Since it is our conclusion that Herron cannot recover anything of State Farm by reason of his wilful misstatement in State Farm's proof of loss signed and sworn to on September 24, 1956, we do not reach the question of co-insurance. However, it would seem that, if Herron were entitled to recover anything of State Farm, he could, at most recover only $2,000, one-half of the agreed value of the dwelling, by reason of the South Carolina statute quoted above and provisions of State Farm's policy in conformity with the statute.

Reversed.