ELSA OLIVIO et al., Respondents, v. GOVERNMENT EMPLOYEES INSURANCE COMPANY OF WASHINGTON, D. C., Appellant, et al., Defendant.

Second Department, January 13, 1975.

438

*Pizzitola & DiBlasi* (*Michael M. Wolpinsky* and *Vincent A. DiBlasi* of counsel), for appellant.

*Stanley Gould* for Edwin Rodriguez and another, respondents.

*Halpern & Brown* (*Isidore Halpern* and *John A. Darienzo, Jr.*, of counsel), for Elsa Olivio and another, respondents.

SHAPIRO, Acting P. J. On this appeal defendant Government Employees Insurance Company of Washington, D. C. (GEICO) seeks reversal of portions of an order of the Special Term in Kings County which, among other things,[1] determined and adjudged that GEICO is liable under the automobile liability insurance policy which it had issued to the codefendant, Loretta Cadogan, up to the maximum coverage of $20,000/40,000 stated

---

1. There are other phases to GEICO's appeal, but they all deal with purely procedural matters not affecting the merits. Since the basic facts are not in dispute and the parties have briefed the merits of the controversy, we reach and decide the substantive issue involved. It should be pointed out, however, that the technical procedural contentions lack merit. See Professor David D. Siegel's Practice Commentaries on CPLR 3213 (McKinney's Cons. Laws of N. Y., Book 7B, CPLR 3201–3400, C3213:11, p. 837) where he said: "Upon denying the motion, the court may require the plaintiff to serve a regular complaint, the defendant to answer it within 20 days and the action to proceed accordingly; *but that would be unnecessary if the moving and answering papers sharpen the issues. The matter is in the court's discretion and should be the subject of a direction in any order disposing of the motion*" (emphasis supplied). (See, also, McGIVERN, J., dissenting in *Rickert* v. *Packet Facilities,* 35 A D 2d 711, 712.)

in the policy, for the accident in which the four plaintiffs were injured. We affirm.

The plaintiffs were passengers in the motor vehicle owned and driven by GEICO's insured, codefendant Cadogan. The vehicle was insured for $20,000/40,000 under a liability policy issued to Miss Cadogan by GEICO on November 16, 1972. The policy also contained medical payments, extraterritorial uninsured motorist, and collision coverages. Prior to the issuance of the policy, and at the request of GEICO, Miss Cadogan filled out an application in which she represented, in response to question 6, that she held a valid unrestricted operator's license or permit; in response to question 8, that she had not had any automobile driver's license, permit or privilege suspended, revoked, or refused; and, in response to question 12, that neither she nor any member of her family had been convicted of or forfeited bail, or paid any fines, for driving violations or citations, other than parking, in the three years preceding the date of the application.

The policy was in effect on July 4, 1973 when the insured's car was involved in a head-on crash with a second vehicle driven and owned by one Edward N. Cluess.[2] On July 17, 1973, the plaintiffs' attorney in this action notified GEICO by letter that he represented the plaintiffs on their claims for damages for the personal injuries they sustained in the July 4 accident. On July 30, 1973 he instituted an action on behalf of the plaintiffs against both Cadogan and Cluess, the respective drivers of the automobiles involved in the accident.

On October 12, 1973 GEICO ascertained that Miss Cadogan had lied in her application for the policy when she responded to questions 6, 8 and 12 as above mentioned. Thereafter, by two letters, dated November 8, 1973 and November 12, 1973, respectively, GEICO informed its insured, and counsel for the plaintiffs, that it would undertake defense of the personal injury suit brought against her by the plaintiffs " since the laws of the State of New York prohibit a recision [sic] of your policy from the date of inception," but that it would indemnify her " for resulting loss to the extent of $10,000 for each person with a maximum of $20,000, for the occurrence." In the November 8 letter GEICO also stated that it intended to reform the policy to reflect a reduction of its bodily injury limits coverage to

---

2. The appellant contends that Cluess is a necessary party to this action. Since Cluess is not being adversely affected by our determination, we do not agree with that contention.

$10,000/20,000 and to delete the medical payments, extraterritorial uninsured motorist, and collision coverages.

The plaintiffs thereupon instituted this action and simultaneously moved for judgment declaring, in effect, that the defendant is obligated to pay up to $20,000/40,000 under its policy on account of any judgments recovered by the plaintiffs against the defendant's insured in the plaintiffs' action to recover damages for the injuries sustained by them.

In opposition to the plaintiffs' motion, GEICO admitted its issuance of its policy with $20,000/40,000 coverage to Miss Cadogan prior to the accident, but claimed that it did so in reliance on her assertions that she possessed a valid New York operator's license which had not been suspended and that she had not been guilty of previous motor vehicle violations; that these assertions were false; and that it had therefore disclaimed coverage beyond the minimum of $10,000/20,000 required by statute. GEICO further stated that it had brought its own action for reformation and rescission of the policy, viz., thus to reduce the amounts of the coverage and to eliminate certain coverages entirely, i.e., medical payments, etc. GEICO also said that it had interposed an answer on behalf of Miss Cadogan in the negligence action.

### THE ISSUE

Although this case is here as an appeal from portions of an order (1) denying GEICO's cross motion to open its default in answering the complaint and (2) adjudging GEICO obligated under its policy up to the monetary limits designated in its policy ($20,000/40,000), GEICO's right to have its default opened turns on whether it has in its affidavits in support of its motion established that it has a valid legal basis for its effort to limit its liability under its policy to Miss Cadogan to the minimum liability coverage of $10,000/20,000 specifically required by statute (Vehicle and Traffic Law, § 345, subd. [b], par. [1]) in view of the false assertions made by her in her application as set forth above. In essence the issue on this appeal is whether GEICO's affidavits in support of its cross motion established that it has a meritorious partial defense to the complaint consisting of a right to reformation of its policy of insurance to limit its liability thereunder to the minimum required by statute ($10,000/20,000).

### THE RIGHT TO REFORMATION

Section 313 of the Vehicle and Traffic Law provides that "no contract of insurance  *  *  *  for which a certificate of insur-

ance has been filed with the commissioner shall be terminated by cancellation by the insurer * * * until at least twenty days after mailing to the named insured at the address shown on the policy a notice of termination ''. It is now settled law in this State that since section 313 abrogated the previously existing common-law right of rescission *ab initio*, such a right of termination operates prospectively only (*Teeter* v. *Allstate Ins. Co.*, 9 A D 2d 176, affd. 9 N Y 2d 655). In that case, the court said (p. 182) : '' Once an insurer issues a binder or insurance policy and gives the insured a certificate of insurance for filing with the Bureau of Motor Vehicles, it is barred from asserting that the insurance coverage failed to attach on the date of issuance or that it failed to continue in force thereafter, during the period during which the certificate of insurance remained uncanceled. A certificate of insurance constitutes a representation by the insurance company to the public and to the State authorities that valid insurance coverage is in effect. The whole scheme of the statute would be frustrated if the insurance company were allowed, because of a hidden infirmity in the policy, to nullify it retroactively with respect to a period during which the company had led the public and the authorities to believe that insurance coverage was in effect (cf. *Shuba* v. *Greendonner*, 271 N. Y. 189; *Reese* v. *Reamore*, 292 N. Y. 292).''

The court also said (p. 182) : '' If the insurer wishes to avoid or minimize the risk of being held liable on a policy obtained by fraud, for a period running from the date of its issuance to a date 10 days after mailing of notice of termination, it must make its investigation of the applicant's record and the truthfulness of his representations prior to issuing a binder or an insurance policy and the accompanying certificate of insurance.''

It is relevant also that the court, in rejecting the insurer's contention that the statute did not do away with the common-law right to rescind *ab initio* for fraud, said (p. 180) : '' It is impossible to reconcile the existence of a right to rescind *ab initio* with the general scheme of the compulsory insurance law. The purpose of the statute is to assure, so far as possible, that there will be no certificate of registration outstanding without concurrent and continuous liability insurance coverage.''

*Teeter* and its progeny (see, for example, *State Farm Mut. Auto. Ins. Co.* v. *Carrion*, 41 A D 2d 708) do not, however, dispose of the question posed here, since we are here faced with an appeal which seeks a determination of whether an insurer may legally seek to reform, not rescind, its policy where the policy was obtained through fraud. Thus, it has been said, '' The

decisions in *Aetna Cas. & Sur. Co.* v. *O'Connor* (8 N Y 2d 359) and *Teeter* v. *Allstate Ins. Co.* (9 A D 2d 176) do not preclude, as a matter of law, reformation of a policy under the assigned risk plan. They do hold that the Legislature abrogated the common-law right of insurance companies to rescind policies issued under the plan and limited their remedy for fraud to cancellation. But while ' cancellation was intended to be the sole means of terminating such contracts of insurance ' (*Aetna Cas. & Sur. Co.* v. *O'Connor, supra,* p. 364), the statute did not deprive a court of equity of its power to declare the ' true agreement between the parties.' (*River Theatre Corp.* v. *Fidelity & Deposit Co.,* 90 N. Y. S. 2d 514, McNALLY, J., affd. 277 App. Div. 770.) '' (*Liberty Mut. Ins. Co.* v. *Murer,* 28 A D 2d 263, 265.)

But in *Reliance Ins. Cos.* v. *Daly* (67 Misc 2d 23, mod. in other respects by this court 38 A D 2d 715) the court in another context was faced with the specific problem here raised. There an insurer, which had issued a policy with personal injury coverage of $300,000/500,000, discovered, some three months after the issuance of the policy and one month after its insured was involved in an accident in which a passenger sustained injuries causing his death, that the insured had falsely stated in his application for the policy that he had had no traffic violations for the 39-month period prior to the effective date of the policy, when in fact he had had four such violations. The insurer's search of the insured's driving record about the time he made application for the policy did not uncover this fact. The insurer, after defending and settling the action against its insured for the sum of $175,000, sought, by a declaratory judgment action, to reform the policy to bring it down to the statutorily required minimum of $10,000/20,000. The Special Term there held that the applicable statutes and case law precluded such a partial disclaimer or rescission by the insurer, stating (p. 25): '' An even stronger reason for the conclusion reached is that plaintiff seeks reformation only because, as is pleaded in its complaint, under secton 313 of the Vehicle and Traffic Law and the decision in *Teeter* v. *Allstate Ins. Co.* (9 A D 2d 176, affd. 9 N Y 2d 655) it cannot obtain rescission *ab initio* for fraud. That is so, the *Teeter* case held, because the Legislature intended by the termination provisions of section 313 to protect the public and the insured by permitting only prospective termination. Though *Teeter* does not preclude reformation to reduce the policy to minimum limits (see *Liberty Mut. Ins. Co.* v. *Murer,* 28 A D 2d 263; cf. Vehicle and Traffic Law, § 345, subd. [i],

par. [1]), it would be anomalous in the extreme to hold that because section 313 prohibits the insurer from asking for complete rescission it is not, in seeking reduction of the limits of its liability, disclaiming liability under subdivision 8 of section 167 of the Insurance Law. So to hold would be to permit two statutes, *both enacted to protect the public* and the insured, to cancel each other out for the benefit of the insurer '' (emphasis supplied).

In affirming as to this issue, this court said (p. 716) : '' The statutory scheme preventing rescission *ab initio* is a recognition that there is a public interest in the insurance policy which may exceed the interest of the parties to the contract (*Aetna Cas. & Sur. Co.* v. *O'Connor,* 8 N Y 2d 359).'' See, also, *American Consumer Ins. Co.* v. *Durante* (N. Y. L. J., Oct. 28, 1974, p. 19, col. 3 [Sup. Ct., Kings County]), where the insurer sought reformation of a $100,000/300,000 personal liability policy to the $10,000/20,000 statutory minimum, on the ground that the issuance of its policy had been induced by fraud. In denying reformation the court not only ruled that its conclusion was required by this court's decision in *Reliance* (*supra*), but also said (col. 4) : '' However, assuming arguendo that such issue of reformation was still open, I would be constrained to hold that under subdivision 8 of section 167 of the Insurance Law, the plaintiff was barred from seeking a delimitation of its policy.''

The provisions of section 313 of the Vehicle and Traffic Law barring retroactive cancellation of a motor vehicle liability policy reflect a legislative purpose to impose on insurers a duty to investigate representations made by an applicant for insurance *before an accident occurs and liability attaches* if they wish to be able to avoid liability under a policy where the insured obtained it by deception or fraud.

In speaking of a predecessor statute (governing the assigned risk plan) dealing with the problem of liability insurance aimed at establishing the financial responsibility of drivers and owners of motor vehicles, the Court of Appeals said that the effect of that previous statute was '' to enforce upon the insurer the necessity to discover fraud at the earliest possible moment, before an accident occurs and the rights of innocent injured third parties have intervened. In this respect, the Plan merely reflects the oft-repeated legislative recognition that liability insurance is not the concern solely of the insured and his insurer '' (*Aetna Cas. & Sur. Co.* v. *O'Connor,* 8 N Y 2d 359, 364).

Here GEICO elected to take the risk of insuring Miss Cadogan for more than the minimum required by statute without first investigating her application. It was only after suit was brought against her for negligent operation of the insured vehicle that GEICO made the investigation which disclosed the falsity of key statements in her application for the issuance of the policy. It is now much too late for GEICO to visit upon the innocent injured plaintiffs here the effects of its failure to shoulder its burden of prompt investigation to discover the applicant's fraud.

Finally, there is language in the Vehicle and Traffic Law which reflects a clearly established legislative policy that persons injured by an insured motorist should not suffer in their ability to recover for their injuries because the insured improperly obtained liability insurance which statutorily established his financial ability to respond in damages. Thus, subdivision (2) of section 310 of the Vehicle and Traffic Law declares, "The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them."

The requirement of section 345 (subd. [b], par. [3]) of the Vehicle and Traffic Law that, to be acceptable as establishing proof of financial liability, a motor vehicle liability policy must contain personal injury liability coverage of $10,000 for bodily injury or death of one person in any one accident and $20,000 for bodily injury or death of two or more persons in any one accident is a minimum requirement. That this required minimum may be exceeded by agreement between the purchaser of such insurance and his insurer on a policy with coverage in excess of the required minimum is specifically declared in subdivision (f) of the same section and in section 311 (subd. 4, par. [a]). That such insurance protection for injured claimants becomes absolute whenever loss or damage covered by the policy occurs is specifically declared in paragraph (1) of subdivision (i) of section 345. When these provisions of the Vehicle and Traffic Law are considered together with the policy embodied in the requirement of subdivision 8 of section 167 of the Insurance Law that an insurer who seeks to "disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident occurring within this state" must "give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured

person or any other claimant," it becomes clear that the Legislature intended to give priority to "innocent victims of motor vehicle accidents" so that they might "be recompensed for the injury and financial loss inflicted upon them," over the interests of the insurer for any damage it may have suffered because of its insured's fraud. Under the circumstances, since GEICO's proposed defense is devoid of merit, its application to open its default was properly denied and the Special Term's adjudication that GEICO is obligated under its policy of insurance for its full monetary limits should not be disturbed.

The order appealed from should therefore be affirmed insofar as appealed from, with $20 costs and disbursements.

COHALAN, CHRIST, BRENNAN and MUNDER, JJ., concur.

Order of the Supreme Court, Kings County, dated March 8, 1974, affirmed insofar as appealed from, with $20 costs and disbursements.