AMERICAN CENTENNIAL INSURANCE COMPANY, Plaintiff,

v.

James SINKLER, James Sinkler, Jr., John Caban and Carmen Garcia, Defendants.

No. CV–94–986.

United States District Court, E.D. New York.

Oct. 26, 1995.

Andrew J. Cook and Debra A. Miller, Newman Schlau Fitch & Lane P.C., New York City, for Plaintiff.

Irwin H. Haut, Morris, Duffy, Alonso & Marulli, New York City, for Defendants.

*MEMORANDUM, ORDER AND JUDGMENT*

WEINSTEIN, Senior District Judge.

Table of Contents

I.   INTRODUCTION .................................................409
II.  FACTS .........................................................409
III. PROCEEDINGS ..................................................410
IV.  RIPENESS .....................................................410
V.   CHOICE–OF–LAW ................................................410
     A.   New York Law ...........................................410
     B.   South Carolina Law .....................................411
     C.   Choice-of-Law Rules ....................................411
VI.  APPLICATION OF LAW TO FACTS RELATING TO CHOICE–OF–LAW .....413
     A.   Grouping of Contacts ...................................413
     B.   The Interests of the States ...........................413
          1.   South Carolina ...................................413
          2.   New York .........................................414
     C.   Conclusion .............................................416
VII. SOUTH CAROLINA LAW ..........................................416
     A.   Summary Judgment .......................................416
     B.   Rescission Affecting Third Parties .....................417
VIII. APPLICATION OF SOUTH CAROLINA LAW TO FACTS ................417
IX.  CONCLUSION ..................................................417

## I.  INTRODUCTION

Plaintiff American Centennial Insurance Company brought this action for a declaratory judgment that it had the right to rescind *ab initio* its auto insurance policy issued to defendant James Sinkler who obtained it through fraudulent misrepresentations. For the reasons indicated below plaintiff is entitled to the relief it seeks.

## II.  FACTS

The facts are uncontested. Four New York residents were involved in a two-car collision in Brooklyn, New York on October 20, 1992. Sinkler drove one car; his son, James, jr., was a passenger. John Caban drove the other car; his mother, Carmen Garcia, was a passenger.

Sinkler held an auto insurance policy issued by Centennial in South Carolina. He had stated on the application that he was a resident of Pinewood, South Carolina and that he would garage the insured vehicle there. Centennial is authorized to issue policies only to South Carolina drivers and owners resident in that state.

After the accident Centennial discovered that Sinkler had lied on his insurance application. In a March 1993 written statement concerning the accident, he listed a Brooklyn address as his residence and admitted that he had been living at that address since 1971

and in New York since 1964. According to the statement, he had been planning to move back to South Carolina, and that the address given on the application was his mother's.

## III. PROCEEDINGS

Sinkler has brought an action in state court for personal injuries against Garcia and Caban. Garcia held a policy issued by Government Employees Insurance Company in New York. Neither Sinkler, jr. nor Caban and Garcia have pending lawsuits. Caban and Garcia have represented that they have no plans to bring an action, but colloquy with the court suggest strongly that they probably will file a claim against Sinkler.

Centennial seeks declaratory judgment authorizing it to rescind Sinkler's insurance policy *ab initio* (as if it never existed), thus avoiding any obligation to Sinkler or to third persons that could arise out of the accident. Centennial claimed Sinkler's misrepresentations were material to the decision to issue coverage.

Sinkler defaulted, resulting in an order as to him rescinding his policy. The order relieved Centennial of the duty either to defend Sinkler or to pay any judgment or settlement rendered against Sinkler.

The remaining issue is whether Centennial is entitled to a declaratory judgment absolving it of liability to Sinkler, jr., Caban or Garcia for any injuries they sustained in the accident. Centennial moves for summary judgment.

## IV. RIPENESS

■ Caban and Garcia assert that the present case is not ripe because they have not sued Centennial for contribution. Plaintiff, they argue, seeks to resolve an "abstract question of law" and not a legitimate "case or controversy."

A "declaration of non-liability on an insurance policy is a well-accepted issue for declaratory judgment under 28 U.S.C. 2201...." *Reliance Ins. Co. v. Calderon,* 685 F.Supp. 72 (S.D.N.Y.1988); 10A Charles A. Wright et al., Federal Practice and Procedure § 2760 (1983) (declaratory judgment commonly used in insurance cases including those concerning validity of policies). An actual controversy exists with an injured third person concerning a policy's validity even though the injured person may decide not to sue. 10A Wright et al. *supra* at § 2757 (citing cases).

Neither Caban nor Garcia have stipulated that they will refrain from seeking recovery from Centennial. The probability remains substantial that they will file a counterclaim in Sinkler's action against them or that they may start an independent action. In either event, Centennial would, as a practical matter, be under strong pressure to defend Sinkler to avoid possible liability to defendants Caban and Garcia (and perhaps Sinkler, Jr.), even though its obligation to Sinkler directly has already been cancelled. Centennial's action is ripe because a live controversy exists concerning its liability arising out of the collision.

## V. CHOICE–OF–LAW

■ Centennial asserts that South Carolina law governs its decision to rescind Sinkler's policy. Defendants Caban and Garcia assert that New York law—which bars such rescission—controls.

### A. New York Law

The relevant New York statute provides:

> No contract of insurance for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer until at least twenty days after mailing to the named insured at the address shown on the policy....

N.Y.Veh. & Traf.L. § 313.1(a) (1986). New York courts hold this provision to prohibit rescission of auto insurance policies *ab initio* even when the policyholder made fraudulent misrepresentations of material issues in obtaining the policy. *Olivio v. Government Employees Ins. Co.,* 46 A.D.2d 437, 362 N.Y.S.2d 873 (2d Dept.1975); *see also Middlesex Ins. Co. v. Carrero,* 103 A.D.2d 694, 477 N.Y.S.2d 644 (1st Dept.1984) (denying rescission where insurance applicants fraudulently concealed identity of true vehicle owners); *Aetna Cas. & Sur. Co. v. Garrett,* 31 A.D.2d 710, 296 N.Y.S.2d 12 (3d Dept.1968) (same); *Teeter v. Allstate Ins. Co.,* 9 A.D.2d

176, 192 N.Y.S.2d 610, 616 (4th Dept.1959) (term "cancellation" not used in technical sense but read colloquially to include termination of coverage in any manner including rescission *ab initio* ).

The prohibition of rescission enforces New York's strong public policy of compulsory insurance aimed at ensuring compensation to accident victims. *Middlesex, supra,* 477 N.Y.S.2d at 645. As Judge Harnett, the respected expert on insurance, noted: "In this State, rescission of auto liability insurance policies after an accident stands in high disfavor, and is generally prohibited." *Allstate Ins. Co. v. Sullam,* 76 Misc.2d 87, 88, 349 N.Y.S.2d 550, 552 (Sup.Ct.Nassau Co.1973); *cf.* Bertram Harnett & Irving I. Lesnick, The Law of Life and Health Insurance (Matthew Bender 1995). New York courts have ruled that its laws establishing compulsory and comprehensive auto insurance abrogated insurers' common law right to rescind insurance contracts for fraud or misrepresentation except on notice pursuant to statute. *See Aetna Cas. & Sur. Co. v. O'Connor,* 8 N.Y.2d 359, 362–64, 207 N.Y.S.2d 679, 170 N.E.2d 681 (1960) (assigned risk plan); *Teeter, supra* 192 N.Y.S.2d at 615 (compulsory insurance law).

B. South Carolina Law

In South Carolina, by contrast, insurers retain the common law right of post-loss *ab initio* rescission for fraudulent procurement of auto insurance policies. *Government Employees Insurance Co. v. Chavis,* 254 S.C. 507, 176 S.E.2d 131, 135–36 (1970) (citing absence of prohibition in S.C.Code Ann. 46–750.51 (1962), now codified at S.C.Code Ann. 38–77–120 (1993)). South Carolina courts have adopted a five-part test to determine when *ab initio* rescission is appropriate. *See Strickland v. Prudential Ins. Co.,* 278 S.C. 82, 292 S.E.2d 301, 304 (1982) (citations omitted). The insurer must show not only 1) the falsity of the statement, but that the falsity was 2) known to the applicant, 3) material to the risk, 4) made with intent to defraud the insurer, and 5) relied upon by the insurer in issuing the policy. *Id.* While insurers with knowledge or reason to know that a misrepresentation was made are estopped from rescinding coverage, an insurer is entitled to rely on an applicant's answers to specific questions; it has no obligation to make an independent inquiry as to their truth. *See, e.g., Southern Farm Bureau Cas. Ins. Co. v. Ausborn,* 249 S.C. 627, 155 S.E.2d 902, 907–08 (1967).

A conflict obviously exists between New York and South Carolina law. Only the latter affords the protection sought by plaintiffs. The conflict is one of both law and policy governing auto insurance practices.

C. Choice-of-Law Rules

Federal courts sitting in diversity jurisdiction normally apply the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This case is therefore subject to New York's choice-of-law principles. See *Fireman's Fund Ins. Co. v. Schuster Films, Inc.,* 811 F.Supp. 978 (S.D.N.Y. 1993).

New York, under Chief Judge Fuld's leadership, abandoned traditional formal rules governing choice-of-law and now requires application of the law of the state having the most significant contacts with the matter in dispute. *Auten v. Auten,* 308 N.Y. 155, 160, 124 N.E.2d 99 (1954); *see also* Restatement (Second) Conflict of Laws § 188 (1971) ("The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties. . . ."); Harold G. Korn, *The Choice-of-Law Revolution: A Critique,* 83 Colum.L.Rev. 772, 820–40 (1983) (reviewing New York's development of modern choice-of-law rules). This is known as the "center of gravity" or "grouping of contacts" approach. *See Auten, supra* 308 N.Y. at 160 (using both terms in contracts dispute); *Babcock v. Jackson,* 12 N.Y.2d 473, 479, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963) (using both terms in torts case); *see also* 3 Harnett & Lesnick, *supra,* at 15–36–37 (noting use of terms " 'center of gravity' "; " 'grouping of contacts' "; and " 'most significant relationships' " to describe approach) (citations omitted). Whether the case is viewed primarily as a contract dispute or as an action in tort may affect the location of the center of gravity.

For contract disputes, New York applies the law of the state having the most significant relationship to the transaction. *See Sullam, supra* 76 Misc.2d at 92, 349 N.Y.S.2d at 556; *Colonial Penn Ins. Co. v. Minkoff,* 40 A.D.2d 819, 338 N.Y.S.2d 444 (App.Div. 1st Dept.1972). Important factors considered by New York courts in insurance cases are the "location of the insured risk, residence of the parties, and where the contract was issued and negotiated." *Munzer v. St. Paul Fire & Marine Ins. Co.,* 145 A.D.2d 193, 538 N.Y.S.2d 633, 637 (App.Div. 3d Dept.1989) (citations omitted).

In tort matters, New York chooses the law of the state with the greatest concern in the specific issue raised by the litigation. *Sullam, supra* 349 N.Y.S.2d at 557. The law of " 'which[ever] state ... has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort....' " *Babcock, supra,* 12 N.Y.2d at 482, 240 N.Y.S.2d 743, 191 N.E.2d 279 (quoting Restatement, Second, Conflict of Laws, § 379[1] ). New York courts look generally to the location of the accident and the residence of the various parties involved. *See, e.g., Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972) (applying Ontario law where accident between automobile and Canadian railroad train in Ontario resulted in death of Ontario resident auto passenger, even though driver was a New York resident and insurance contract had been issued in New York); *Reliance Ins. Co. v. Calderon,* 685 F.Supp. 72, 73–75 (S.D.N.Y.1988) (finding that New York had the more significant relationship where all the victims but one were New York residents and the accident occurred in New York even though the rental and insurance contracts were formed in Virginia). Whether characterized as contract or tort, New York requires balancing the interests of each state in having its law apply.

■ The contracts approach controls a dispute between insurer and insured over a policy's validity. The appellate division, for example, ruled that New Jersey law applied where the accident occurred in New York but the policy was issued in New Jersey to a driver using a New Jersey address for a vehicle registered there. *Government Employees Ins. Co. v. Sheerin,* 65 A.D.2d 10, 410 N.Y.S.2d 641, 642–43 (App.Div. 2d Dept. 1978). The court held that the "law of the state where the policy was written, as evidenced by the parties' understanding as to the principal location of the insured risk, would be controlling, irrespective of the fact that the accident occurred in another state." *Id.* 410 N.Y.S.2d at 643; *see also American Home Assurance Co. v. Employers Mut. of Wausau,* 77 A.D.2d 421, 434 N.Y.S.2d 7, 10–11 (1st Dept.1980) (following *Sheerin*). *Sheerin* can be read, however, as applying the old rule that the law of the contract's location (*"lex loci contractus"*) governs the choice-of-law. *See American Home, supra* 434 N.Y.S.2d at 10 (noting *Sheerin* "confirmed the vitality of the *lex loci contractus* doctrine"); 3 Harnett & Lesnick, *supra,* at 15–39 (noting that state of contracting is often understood as having the strongest contacts); *but cf.* Annotation, *Conflict of Laws in Determination of Coverage Under Automobile Liability Insurance Policy,* 20 A.L.R.4th 738, 742 (1983) ("It is not unusual for there to be cases in a single jurisdiction supporting each rule.").

Where a party to the dispute is an injured third person, automobile accident reparation cases do not sound exclusively in tort or contract. *See Sullam,* 349 N.Y.S.2d at 558. As Judge Harnett noted:

Automobile accident reparation is something special, born of a distinct and enlarging social need. It depends upon a specific interest in policing roads and streets, and in making provisions for injuries sustained in auto accidents. Increasing amounts of interstate travel produce fortuitous and often complex legal entanglements. Issues of accident recompense are resolved, less by reference to technical rules of happenstance, more by ascertaining the nature and depth of each locality's relation to the injuries and to the manifest policies of insurance coverage and conduct. We [must] examine the precise issue of conflict and each State's policy relation to that issue.

*Id.*

Judge Harnett's analysis indicates that under New York choice-of-law rules a court

could apply the law of different states to the same transaction respecting the rights of different parties. *Cf. Braune v. Abbott Laboratories,* 895 F.Supp. 530, 564 (E.D.N.Y.1995) ("Different constructions of claims 'accrual' may apply within the choice of law context, for varying purposes and issues . . . .") (citations omitted); *id.* at 565 ("Conflicts analysis might be more subtle in weighing the equities of plaintiffs, defendants and interested jurisdictions"); Ibrahim J. Wani, *Borrowing Statutes, Statutes of Limitations and Modern Choice of Law,* 57 U.M.–K.C.L.Rev. 681 (1989) ("Modern choice of law repudiates [formalism] in favor of broader based analyses that take into account different factors like the expectations of the parties, the respective states' policy interests and the equity and fairness of the case to either party.").

Many state courts applying a center of gravity test have found that the law of the state where the contact was made governed because that state had the most significant relation to the dispute. *See* Annotation, *supra* 20 A.L.R.4th at 743. In *Sullam,* however, the New York supreme court found that New York's choice-of-law principles required application of New York law to determine whether coverage could be denied where both drivers and all passengers in an accident were New York residents, and the accident took place in New York, even though the contract was formed in Massachusetts to govern a Massachusetts risk. *Id.* 349 N.Y.S.2d at 562. The court found that New York's interest in its strong public policy of ensuring compensation for accident victims overrode Massachusetts' interest in its law enabling insurance companies to abandon liability protection policies when the accident occurs out of state. *Id.* 349 N.Y.S.2d at 564–65. *Sullam* demonstrates that the interests of each state in determining an insurer's liability vary depending upon whether the case involves an insured or a third person.

*Sullam* does not require that tort issues dominate the analysis in third person cases. Nor, as indicated in Part VI.B.2 *infra,* did its analysis ultimately turn on New York's provision governing *ab initio* rescission. *Id.* 349 N.Y.S.2d at 565–72 (resting disposition on estoppel for failure to investigate "clear cut warnings" of fraud). Judge Harnett's thoughtful analysis does illustrate, however, the importance of examining closely all of the relevant interests to determine the dispute's center of gravity.

## VI. APPLICATION OF LAW TO FACTS RELATING TO CHOICE–OF–LAW

### A. Grouping of Contacts

If the present case involved solely a dispute between insurer and insured, *Sheerin* would control and South Carolina law would apply. The presence of injured third persons, however, raise additional issues of compensation and make determination of the center of gravity in this conflict more difficult.

Viewed as a contracts problem, New York's choice-of-law principles would heavily favor application of South Carolina law. The contract was formed between a South Carolina insurer and an applicant representing himself as a South Carolina resident covering a risk declared to be located within that state. The only connection between the transaction and New York is Sinkler's actual (but deliberately unrevealed) residence. Viewed this way, nearly all of the contract contacts are located in South Carolina; selection of New York law would reinforce Sinkler's fraud.

The interests balance differently in tort. The accident occurred in New York, and all drivers and passengers are New York residents. The insurer, as noted, is a South Carolina corporation. Viewed in this light, New York would appear to have the more significant interest. Given that the center of gravity does not so clearly rest in one state or the other based on contacts alone, resolution of the choice-of-law problem requires weighing the underlying policy interests each state has in applying its law. *See Sullam,* 349 N.Y.S.2d at 562.

### B. The Interests of the States

#### 1. South Carolina

South Carolina has a strong interest in regulating insurance contracts formed within the state covering predominantly in-state risks. It also has an interest in preventing the kind of misrepresentation employed by the insured. In permitting *ab initio* rescis-

sion of insurance contracts, South Carolina holds the insured accountable for material misrepresentations.

This stance on insurance fraud serves to protect South Carolina's interest in low auto insurance rates for its residents. Sinkler's South Carolina policy, for example, cost $210.50 for six months. A similar policy issued for a New York City resident would have cost considerably more. *See, e.g., Study Shows N.C. Auto Insurers Costs Seventh Lowest in Nation,* PR Newswire, Jan. 30, 1995, *available in* LEXIS, Nexis Library, PRNEWS file (noting study by National Association of Insurance Commissioners showing auto insurance rates in New York State considerably higher than South Carolina). The difference in rates makes this kind of insurance fraud financially attractive to New York drivers. South Carolina minimizes the effect of such fraud on insurance rates by allowing rescission after loss occurs. South Carolina rates therefore do not need to account for unanticipated New York or other big city risks or the administrative costs of routinely conducting investigations of applications for out-of-state fraud.

Application of New York law in this case would effectively undermine South Carolina's interests by placing the same burden on South Carolina insurers to uncover misrepresentations that New York insurers bear. South Carolina insurers would be on notice that to avoid potential liability on some fraudulently obtained policies, they would need to investigate each application before issuing a policy. The result of applying New York law would be to increase the cost of insurance to bona fide South Carolina residents.

### 2. New York

New York's interest in applying its law barring *ab initio* rescission is in enforcing its strong public policy of compulsory insurance. Its statutory scheme is designed to ensure that "motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them." N.Y.Veh. & Traf.L. § 310(2). New York statutes require insurance as a condition of auto registration, *see id.* at § 312, and provide coverage for innocent victims of uninsured motorists, *see* N.Y.Ins.L. §§ 5201 *et seq.* (establishing and providing insurance through Motor Vehicle Accident Indemnification Corp.); *id.* at § 3420(f) (requiring New York policyholders to purchase uninsured motorist coverage); *see also* Norman H. Dachs & Jonathan H. Dachs, *The Act That Increases Motor Vehicle Coverage,* N.Y.L.J., Sept. 12, 1995 at 1, 7 (reviewing statutory provisions).

The New York provision preventing rescission is part of this comprehensive scheme. The legislature placed the burden on insurers to investigate representations made by applicants for insurance *before* liability attaches, so that coverage is not rescinded once an accident occurs. *Olivio, supra,* 362 N.Y.S.2d at 873. As Chief Judge Fuld noted, the law forces the insurer " 'to discover fraud at the earliest possible moment, before an accident occurs and the rights of innocent injured third persons have intervened.' " *O'Connor, supra,* 8 N.Y.2d at 364–65.

This approach is consistent with that of many states where various provisions of compulsory or comprehensive auto insurance schemes have been held to prohibit post-loss rescission for fraud or misrepresentation in order to prevent insurers from escaping liability to third persons. *See Barrera v. State Farm Mut. Auto. Ins. Co.,* 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969) (prohibiting post-accident rescission absent prompt pre-accident investigation of insured's application); *Pearce v. Southern Guaranty Ins. Co.,* 246 Ga. 33, 268 S.E.2d 623 (1980) (holding No–Fault Act bars retroactive cancellation after accident); *In re Opinion of Justices,* 251 Mass. 569, 147 N.E. 681 (1925) (upholding constitutionality of statutory prohibition on cancellation); *State Farm Mut. Auto. Ins. Co. v. Kurylowicz,* 67 Mich.App. 568, 242 N.W.2d 530 (1976) (protecting third persons from rescission after statutory investigation period); *Nimeth v. Felling,* 282 Minn. 460, 165 N.W.2d 237 (1969); *Atlantic Cas. Ins. Co. v. Bingham,* 10 N.J. 460, 92 A.2d 1 (1952) (holding financial responsibility act barred cancellation *ab initio* ); *American Mut. Ins. Co. v. Commercial Union Ins. Co.,*

116 N.H. 210, 357 A.2d 873 (1976) (holding liability absolute once loss occurred), *overruled on other grounds by Vigneault v. Travelers Ins. Co.*, 118 N.H. 75, 382 A.2d 910 (1978); *O'Connor, supra* 8 N.Y.2d 359, 207 N.Y.S.2d 679, 170 N.E.2d 681 (1960); *see also* Annotation, *Rescission or Avoidance, for Fraud or Misrepresentation, of Compulsory, Financial Responsibility, or Assigned Risk Automobile Insurance*, 83 A.L.R.2d 1104, 1106–09 (1962) (citing cases); *but see United Security Ins. Co. v. Michigan Commissioner of Ins.*, 133 Mich.App. 38, 348 N.W.2d 34 (1984) (insurer owed no duty to insured to uncover intentional misrepresentation in application). The general principle behind these holdings is that post-loss rescission is incompatible with protections enacted to guaranty compensation to innocent accident victims. *See Teeter, supra,* 192 N.Y.S.2d at 615; 7 Am.Jur.2d 493 (1980).

Application of South Carolina law to Sinkler's insurance contract, however, would not undermine New York's interest in having its public policy enforced. Rescission in the present case would not ultimately deny protection to Caban and Garcia if a court were to find them entitled to recovery from Sinkler. New York statutes have provided the means to ensure compensation to any person injured due to the fault of an uninsured motorist within the state. *See* N.Y.Ins.L. § 3420(f)(1) (requiring that all auto insurance policies issued in state contain uninsured motorist protection); N.Y.Ins.L. §§ 5201 *et seq.* (establishing Motor Vehicle Accident Indemnification Corp. to compensate uninsured third persons injured by uninsured motorists). Garcia's policy is required under section 3420(f)(1) to contain uninsured motorist protection. That provision should cover both her and her son for any loss they are found to have suffered as a result of Sinkler's uninsured negligence.

In enacting the uninsured motorist laws, the New York legislature covered the problem raised in this case. The legislature found and declared that

> [T]he motor vehicle financial security act in the vehicle and traffic law [§§ 310–321], which requires the owner of a motor vehicle to furnish proof of financial security as a condition of registration, fails to accomplish its full purpose of securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them, in that the act makes no provision for the payment of loss on account of injury or death of persons who, through no fault of their own, were involved in motor vehicle accidents caused by:
>
> (1) uninsured motor vehicles registered in a state other than New York, ...
>
> ....
>
> (6) insured motor vehicles where the insurer disclaims liability or denies coverage....

N.Y.Ins.L. § 5201(b).

The legislature acknowledged the inevitability of injuries caused by motorists who, under the laws and policies of their own states, either need not be insured or are properly denied coverage. New York acknowledged, in passing the compulsory insurance law, that these motorists fell outside its provisions:

> The last word on ousting the uninsured motorist has not been written. There are loopholes that must be plugged: the ... out-of-state motorist ... [is a problem] left unresolved by the legislation adopted.... [I]t is of the utmost importance that the hapless victims of these unprotected encounters be safeguarded.

Dachs & Dachs, *supra*, at 1, 7 (quoting the Joint Legislative Committee on Insurance Rates and Regulations, 1956 N.Y.Legis.Ann. p. 261). Thus, the New York legislature recognized the limits of both its law and public policy of compulsory coverage in guaranteeing recovery for innocent third persons under the uninsured motorist provisions.

New York's interest in enforcing its public policy does not control this dispute since the legislature has explicitly provided protection to those injured by an uninsured motorist. While the uninsured motorist provisions are "not intended to be a sop for insurance risks dumped on New York by its neighbors," *see Sullam, supra* 349 N.Y.S.2d at 566, South Carolina is surely not to be deemed a "dumper" where it allows rescission based upon a

New York motorist's fraud. The New York legislature can apply ample pressure on cheats like Sinkler by using civil sanctions of license and registration revocation or even criminal penalties if its present statutes do not suffice to protect the injured.

It is true that on facts similar to those in the present case the *Sullam* court found the center of gravity was in the state where the accident took place and the injured parties resided. *Sullam, supra* 349 N.Y.S.2d at 564–65. In *Sullam* the defendant obtained a Massachusetts auto insurance policy by representing that, while his permanent residence was in New York State, he was a college student in Boston. After defendant was involved in an auto accident in New York, the insurer discovered that both the New York and Massachusetts addresses given by defendant, as well as his name, were incorrect. The court applied New York law preventing the insurer from rescinding the insurance policy.

The choice-of-law considerations in *Sullam* are distinguished from the present case on several grounds. First, the insurer issued a policy with the knowledge that defendant's permanent address was out-of-state. The fraud in *Sullam* did not alter the center of gravity. Sinkler's fraud, by contrast, was what brought South Carolina into the present case, and is exactly the activity South Carolina law seeks to prevent. Thus, it is inappropriate to give much weight to Sinkler's ultimately discovered New York residence in determining New York's interest in the case.

Second, Massachusetts' interest in having its law permitting *ab initio* rescission apply in *Sullam* was weaker than South Carolina's interest in the present case. The Massachusetts law designated as "optional" coverage for liability for out-of-state accidents. *Sullam*, 349 N.Y.S.2d at 559. It therefore permitted rescission of coverage for out-of-state accidents but not for those in-state. While the South Carolina law is designed to prevent fraud, the *Sullam* court rightly noted the Massachusetts law's favoritism of its own residents. *See Id.* 349 N.Y.S.2d at 563. As the *Sullam* court pointed out: "Whatever the exclusion's rationale was [in 1925 when the

law was enacted], it . . . now appears to have no independent policy justification in an era of [extensive interstate travel]." *Id.* 349 N.Y.S.2d at 564. The Massachusetts law at issue in *Sullam* clearly compromised the interests of New York residents in a way that the South Carolina law at issue in this case does not.

Third, estoppel in *Sullam* was the ultimate basis of decision. There were intimations of fraud surrounding the application. Yet, after being put on notice, the insurer in *Sullam* took no action to protect itself.

### C. Conclusion

New York courts would apply South Carolina law in this case. While mindful of the penchant of forum states to find that conflict of laws and choice-of-law principles favor their own residents, *see* 12 John A. Appleman, Insurance Law and Practice 298 (1981) ("Of course, any forum is always quick to protect its own residents."); Korn, *supra* at 920–21 ("[The New York Court of Appeals] had not in a single one of its post-*Babcock* tort cases [through 1974] even conceded the *existence* of any other state interest opposing that of New York.") (citation omitted), the interests of New York residents and policy are not substantially compromised by the choice of South Carolina law. Both states have significant contacts with the dispute, but South Carolina has the greater interest in having its law applied. The case involves a direct confrontation with South Carolina's law imposing the burden of avoiding insurance application fraud squarely on applicants, but only a minimal conflict with New York's policy favoring compulsory insurance.

### VII. SOUTH CAROLINA LAW

As already noted in Part V.B *supra*, South Carolina permits *ab initio* rescission of auto insurance contracts where the applicant fraudulently induced coverage. The remaining issue is whether, under applicable South Carolina law, plaintiffs are entitled to summary judgment.

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

56(c); *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While doubts must be resolved in favor of the nonmoving party, he must provide "concrete particulars" showing a need for trial. *See R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978).) The opponent must respond to motions supported with affidavits by setting forth "specific facts showing that there is a genuine issue for trial" or by showing a good reason for the absence of such specific facts. Fed. R.Civ.P. Rules 56(e), (f).

**B. Rescission Affecting Third Parties**

Rescission is permitted when South Carolina's five-part test is satisfied. *See Strickland, supra.* In this case the policy has already been rescinded as a result of the default judgment. Centennial now maintains that the rescission must apply to third persons Caban and Garcia as well.

■ Absent a statutory provision to the contrary, an injured party generally stands in the shoes of the insured. *See, Southern Farm, supra* 155 S.E.2d at 913 (judgment creditors of insured have no greater rights than insured); 8 Appleman, *supra* at 334. This rule does not generally deprive third persons of the right to litigate the liability of the insurer where the insured defaulted. See, e.g., *M.F.A. Mut. Ins. Co. v. Cheek,* 34 Ill.App.3d 209, 340 N.E.2d 331 (1975) (holding default judgments against insured rescinding policy do not preclude litigation by third persons); 8 Appleman, *supra* at 367–69. Thus, the default judgment against Sinkler does not dispose of the present motion. Rescission as against Mr. Caban and Ms. Garcia must be adjudicated as an independent matter.

■ Defendants claim that South Carolina law entitles them to go to trial on the basis that whether a policy may be rescinded is a question for the finder of fact. See *State Farm Fire & Cas. Co. v. Herron,* 269 F.2d 421 (4th Cir.1959) (holding rescission under South Carolina law a question of fact unless so plain that it becomes matter of law). That holding does not relieve a litigant's burden on a motion for summary judgment. As noted above, for an issue to go to trial there must be "concrete particulars" establishing a genuine issue of material fact. *See R.G. Group, supra* at 77. Third persons seeking adjudication of insurance policy rescission must therefore still clear the hurdles imposed by summary judgment in order to proceed to trial.

**VIII. APPLICATION OF SOUTH CAROLINA LAW TO FACTS**

■ Centennial asserts that Sinkler's misrepresentations satisfy the five factors required for rescission and have provided a factual basis through affidavits and exhibits to support its claims. Its affidavits establish that Sinkler's statement of his residence and location where he would garage the car were untrue and he presumably knew where he lived. The misrepresentation was material to the risk because Centennial was only authorized to insure risks located within South Carolina, and obviously relied upon defendant's statement. Finally, the facts and circumstances demonstrate that the statements were made with the intent to deceive. Sinkler must have known that no insurer would provide coverage for a car in Brooklyn at the rate Centennial charged Sinkler on the basis of the South Carolina address.

Defendants Caban and Garcia offer no factual basis to contest any of these assertions. The record contains no affidavits, exhibits, or depositions putting forward any facts that contradict those asserted by Centennial. Nor have defendants shown any reason why they would be unable to present facts justifying opposition to the motion. Instead, defendants argue merely that because the validity of a rescission is an issue for the finder of fact, they are entitled to go to trial.

Since there is no genuine issue of material fact, plaintiff is entitled to declaratory judgment.

**IX. CONCLUSION**

Summary judgment is granted in favor of plaintiff. The policy issued to James Sinkler and rescinded by an order of this court, is declared rescinded *ab initio* with respect to

potential claims brought by third persons Carmen Garcia and John Caban.

SO ORDERED.