Nathan R. Sobel, S.
This construction proceeding requires consideration of the doctrine of "merger” in the law of trusts. The New York position, not held by a majority of the States, has been labeled backward and unsound by legal scholars (2 Scott, Trusts [3d ed], § 99.3).
Testator, Alvin Seidman, died October 22, 1975, leaving a wife, Rosalind, and four children, two of whom are infants. His will has been admitted to probate and letters testamentary issued to the widow. Although nominated also as trustee, the widow has not requested that letters of trusteeship issue.
As executrix, the widow petitions for construction contending that a residuary trust created by testator for her benefit, with remainder to his "descendants,” is in law an outright disposition, since she is both sole income beneficiary and sole trustee. This contention rests on the frequently litigated doctrine of "merger” of legal and beneficial interests in a trust.
Of course a true merger takes place when the entire interest (income and principal) becomes vested in a single beneficiary. (See, e.g., Greene v Greene, 125 NY 506.) In that circumstance there can be no valid trust and the owner of the entire beneficial interest takes the principal outright free of trust. (2 Scott, Trusts [3d ed], § 99; 1 Restatement, Trusts 2d, §§ 5, 99.) This is not the contention of this petitioner. Her contention rests on other grounds.
*464 By virtue of EPTL 7-2.1, when an express trust is created in this State, it vests in the trustee (not the beneficiary) the entire legal estate subject only to the execution of the trust. The income beneficiary takes solely an equitable interest — the right to enforce the trust. However, when the same person holds both the legal estate and the equitable interest, there is said to be a "merger” and no trust is created. There is ample authority that this consequence follows. (See Powers, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1502, 1975-1976 Pocket Part, pp 78-80.) But as discussed infra this does not by any means result in the income beneficiary taking the principal outright and destroying as well the remainder interests of testator’s "descendants.”
As the court understands the petitioner’s contention, it rests not alone on the doctrine of "merger” but also on the intention of this testator.
I
Mr. Seidman’s will to assure the full marital deduction disposes of one half of his substantial gross taxable estate outright to Mrs. Seidman.
It is contended by the petitioner, that with the primary motive and intention that the remaining half of his estate might escape taxation upon Mrs. Seidman’s death, he created a trust for her benefit with a nongeneral power of appointment, in the following relevant terms—
"Bl. My trustee shall pay the net income to my wife Rosalind Seidman, as long as she shall live * * * If while my wife is such beneficiary, my Trustee in her sole discretion shall deem the income insufficient to maintain and support my wife, my Trustee may devote to her relief such portion of the principal as she deems necessary and proper in the circumstances. * * *
"C. Upon my wife’s death, there shall be distributed the remainder of my trust estate unto such of my descendants, in such manner and proportions, and upon such limitations and conditions as my wife shall appoint by her last will and testament.”
The power of appointment given by testator to his wife Rosalind (par C above) is indeed nongeneral and as such suffices to make the principal nontaxable in her estate. It is also observed, for later reference, that it is a "special” power *465 to appoint by will among testator’s "descendants.” The power is also "imperative” since the word "shall” is used but also because there is no alternative disposition should the donee, Mrs. Seidman, fail to exercise the power. Should a donee fail to exercise an "imperative” power, the court will do so. (EPTL 10-3.4; See Glasser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 10-3.4, 1975-1976 Pocket Part, p 132.) And, the power is as well "exclusive” since the donee may select among the class of appointees ("descendants”). When a donee fails to exercise a power which is both "imperative” and "exclusive,” the court will exercise such a power for the benefit of all appointees equally (EPTL 10-6.8). Therefore, nothing in the power of appointment created by Mr. Seidman can make the principal of Mrs. Seidman’s trust potentially taxable in her estate.
The power to invade principal, in the trustee’s discretion, contained in quoted paragraph B above, does not on its face make the trust taxable since the power appears to be limited to "an ascertainable standard relating to health, education, support and maintenance” (Internal Revenue Code of 1954 [US Code, tit 26, § 2041, subd (b), par (1), cl (A)]). Such a standard for invasion does not ordinarily convert a nontaxable special power into a taxable general power.
Thus, the future tax problem which Mrs. Seidman envisions is created by article seventh of Mr. Seidman’s will which nominates her as the sole trustee of her own trust. Presumably, her attorneys have given consideration to the simple expedient of her renunciation of her trusteeship (SCPA 1504) for they have deliberately refrained from requesting such letters on her behalf. If the sole purpose of Mr. Seidman in creating the trust in issue was to avoid taxation of the fund in Mrs. Seidman’s estate perhaps that purpose might be effectuated by her renunciation.
Instead, it is contended in the petition, that Mr. Seidman having failed in his primary purpose to create a generation-skipping trust for Mrs. Seidman, his next intention would have been to give her the principal of the trust outright in order that she might engage in her own estate planning. (In the above regard, it is observed that the provisions of the 1976 Tax Reform Act applicable to generation-skipping trusts made effective as of April 1, 1976 imposes rather strict limitations on such future transfers.)
The two adult sons of the decedent who are potential *466 appointees (remaindermen) of Mrs. Seidman’s trust have been cited and have neither appeared or objected. The two infant members of that class are represented by a guardian ad litem who opposes the granting of the relief requested.
As heretofore discussed, Mrs. Seidman is a donee of a power which is "imperative” (EPTL 10-3.4) and which mandates her exercise among testator’s "descendants”. The term "descendants” encompasses more than one generation and therefore connotes futurity requiring the class of "descendants” to be living at her death. (Matter of Bogart, 62 Misc 2d 114, 119-120.) While this court is not averse to Mrs. Seidman engaging in her own estate planning with the principal of her trust, it must be done within the confines of Mr. Seidman’s will. If this court grants the petition and gives her the principal of the trust outright she may make an inter vivos gift to "descendants” now living who may not be living at the time of her death. Of greater concern, she may make inter vivos or testamentary dispositions among persons not "descendants” of the testator, e.g., a "new” family.
That the disposition in issue was motivated solely by tax considerations which did not eventuate, does not appear on the face of the will and moreover cannot be established by either extrinsic proof or Mr. Seidman’s declarations or oral instructions to his draftsman. (Matter of Rosenwasser, NYLJ, Dec. 12, 1974, p 17, col 2; Matter of Deane, 4 NY2d 326; Matter of Smith, 254 NY 283; Matter of Debout, 35 AD2d 1067; Matter of Frederick, 41 Misc 2d 759, affd 22 AD2d 760.)
The branch of the petition which requests construction that Mrs. Seidman is entitled to the principal of the trust outright is denied.
II
We discuss next the problem of "merger” mentioned at the outset of this discussion.
What is the result when a testator creates a trust with income for life for A (wife) remainder to B (children) and appoints A, the sole income beneficiary, as the sole trustee? (That in lieu of specifying the remainder interest, testator gives to A a testamentary power of appointment, should not change the legal consequences.)
The question is posed in its simplest form. It is observed also that A may become the sole income beneficiary or sole *467 trustee by operation of law, viz. death or renunciation of other income beneficiaries or trustees. And of course A may be the sole trustee of a trust in which she shares income with others. (See discussion 2 Scott, Trusts [3d ed], §§ 99-99.5.)
The decisions are illuminating but these do not articulate the reasons for the results. It will be helpful to do so, but briefly.
For the most part, the decisions rest upon the provisions of EPTL 7-1.1 ("When right to possession creates legal ownership” and EPTL 7-1.2 ("Trustee of passive trust not to take”). These statutes are derived respectively from sections 92 and 93 of the Real Property Law which in their earlier versions were applicable solely to land (real property) titles and constituted New York’s version of the Statute of Uses (27 Henry VIII, ch 10). It is not possible to discuss briefly the Statute of Uses. It suffices to note however that feudal titles to land descended to heirs. Except in limited circumstances, such titles could not be transferred by deed or will outside the line of descent. Before the Statute of Uses, all sorts of devices were used to transfer full use and possession to persons not heirs while leaving legal title in others. The Statute of Uses was purposed to prevent such devices. Thus, our version EPTL 7-1.1 applicable to both real and personal property provides— "Every person who by virtue of any disposition is entitled to actual possession of property and the receipt of income therefrom has a legal estate in such property of the same quality and duration and subject to the same conditions as his beneficial interest.” When enacted in 1830 as part of our Revised Statutes, the provision was purposed to simplify and strengthen titles in land. When applied today to modern trusts, whether of real or personal property, it has no practical utility at all.
The same may be said of the companion section, EPTL 7-1.2, which abolishes "passive” trusts — those in which no active duties are imposed on the trustee. Except where a power in trust is imposed, modern trusts invariably require active duties of a trustee.
When the predecessors to the cited statutes were as yet applicable solely to trusts of real property, Judge Finch in Woodward v James (115 NY 346, 357) observed — "It is undoubtedly true that the same person cannot be at the same time trustee and beneficiary of the same identical interest. To say that he could would be a contradiction in terms, as *468 complete and violent as to declare that two solid bodies can occupy the same space at the same instant. Where, however, the trustee is made beneficiary of the same estate, both in respect to its quality and quantity, the inevitable result is that the equitable is merged in the legal estate, and the latter alone remains." (Emphasis added.)
While sound in the context to which it was applied, an action for partition of real property, Woodward has lost its precedental value (discussed, infra). Its holding that a merger occurs when the equitable interest of the income beneficiary and the legal estate of the trustee vests in the same person, does not mean that the income beneficiary receives the principal of the trust in fee simple absolute. As the statute (EPTL 7-1.1) directs, the income beneficiary receives a legal estate "of the same quality and duration * * * as his beneñcial interest. ” (Emphasis added.) In short, the equitable interest of a life income beneficiary of the principal of a trust would be converted into its legal equivalent viz. a legal life estate in the principal (whether real or personal) of the trust. However, all future estates (remainder or reverter interest in the principal of the trust) remain intact. Upon the death of the life tenant the principal must be paid to the remaindermen. This latter consequence is clearly expressed in Losey v Stanley (147 NY 560, 568) — "The provision of the Statute of Uses and Trusts (1 Rev. St. 729, § 60) * * * is by settled construction limited to the trust estate, and has no application to future legal estates in lands covered by the trust, to take effect in possession on the termination of the trust.” This course was followed in a series of cases.
When the sole income beneficiary is named in the will as sole trustee, the decisions usually hold that no trust results, the equitable interest of the life income beneficiary becoming a legal life estate. The personal representative of the life tenant will account to the remaindermen. (Rose v Hatch, 125 NY 427; Matter of Farrell, 133 App Div 97, affd 198 NY 579; Matter of Bunn, 36 Misc 2d 511; Matter of Berman, 33 Misc 2d 1038; Matter of Wind, 1 Misc 2d 260; Matter of Richardson, 135 Misc 726, affd 229 App Div 765.)
When a sole income beneficiary during the course of administration becomes by operation of law, a sole trustee, the decisions hold that the trust, though valid in inception, is then extinguished and terminated and the equitable interest of the life income beneficiary becomes a legal life estate. The per *469 sonal representative of the life tenant will account to the remainderman. (Reed v Browne, 295 NY 184; Weeks v Frankel, 197 NY 304.)
The application of the rule can and has led to absurd consequences. In one case the sole trustee was an income beneficiary along with others. It was held that she acquired a legal life estate for her share of the trust (real property) and remained a trustee for the interests (personal property) of the other income beneficiaries. (Woodward v James, 115 NY 346, supra; cf. Sweet v Schliemann, 95 App Div 266.) In another case where there were successive income interests, it was held that the interest of the sole income beneficiary and sole trustee merged into a legal life estate for the duration of her own income interest only to become a trust again for the duration of the successive income interest (Matter of Galloway, 139 Misc 183). Such decisions bring back into modern trust law the ancient doctrines of shifting and springing uses.
Such unnecessary and often absurd consequences led many legal writers and courts to question the whole "merger” doctrine. In the first case after lapse of many years to reach the Court of Appeals, Judge Fuld in Matter of Phipps (2 NY2d 105, 108-109) observed — "While, therefore, the trustee and the beneficiary 'must be distinct personalities,’ and while 'the merger of interests in the same person would effect a legal estate in him, of the same duration as the beneficial interest designed’ (Greene v Greene, 125 N. Y. 506, 510; see Real Property Law, § 92), this does not mean that a merger necessarily occurs if one of two trustees dies leaving the sole beneficiary as the only trustee. The doctrine of merger is not to be applied 'with rigidity’ (1 Bogert, op. cit, , p. 549), and, where it appears to have been the intention of the settlor or testator, perhaps for the protection of the remainderman, that the trust continue or that a successor trustee be appointed, the courts will act to prevent the extinguishment and the termination of the trust. ” (Emphasis added.)
As any Surrogate experienced with accountings at the termination of a legal life estate is aware, a legal life estate in' real property is a nuisance and only tolerable where the life tenant is relieved of the burden of amortization of mortgages and the assumption of taxes and other maintenance expenses. A legal life estate in personal property is an abomination — an accurate accounting is unheard of and where accompanied by a power of invasion, however limited, affords no protection *470 whatsoever to the remaindermen. If there is a single dominant purpose for the creation of a modern trust in a testator’s testamentary scheme, that purpose is to pass the corpus to his remaindermen.
If intention of the testator is to govern, and that is precisely what Judge Fuld did hold in Phipps (supra), that the testator has taken the pains to create a testamentary trust, standing alone, is a sufficient manifestation of intention to create a trust and not a legal life estate.
Because that factor was present in Phipps, Judge Fuld mentions that one such indicia of intention is a provision for a successor trustee should by operation of law the same person becomes sole income beneficiary and sole trustee. But in every modern trust instrument there are other such indicia of intention in the powers conferred or the limitations imposed upon the trustee.
Even where the will nominates the sole income beneficiary as the sole trustee there are manifestations of intention to create a trust rather than a legal life estate. Every express trust created in New York is by statute a "spendthrift” trust. The income interest is unassignable by the income beneficiary (EPTL 7-1.5). The income interest is generally unavailable to creditors of the income beneficiary (EPTL 7-3.4). A legal life estate is both assignable and subject to claims of creditors, consequences not intended by the testator. (Matter of Duskis, 76 Misc 2d 411.)
Following Phipps (supra), the Third Department in Matter of Whitehouse (25 AD2d 929) held that a legal life estate resulted when the sole income beneficiary was nominated in the will as the sole trustee. That court distinguished Phipps because provision in the Whitehouse will was made for a "substitute” rather than a "successor” trustee. However other Surrogates have followed Phipps. (See, e.g., Matter of Haskell, 59 Misc 2d 797, affd 34 AD2d 734; Matter of Lawson, NYLJ, Dec. 9, 1971, p 20, col 3) and have held that even where, as in this case, the testator nominates the sole income beneficiary -as sole trustee, instead of declaring a "merger” and extinguishing the trust with resulting legal life estate, the court would appoint a cotrustee to serve with the nominated trustee and continue the trust.
This court believes, and holds, that by virtue of Matter of Phipps, (2 NY2d 105, supra) and its suggested "intention” test, the doctrine of "merger” no longer exists as applied to modern *471 testamentary trusts. For no testator intends that a trust which he has expressly created shall be extinguished and terminated merely because by his nomination or by operation of law, one person becomes the sole beneficiary — sole trustee. Whether or not the will makes provision for an additional trustee, the court will exercise its discretion and appoint a cotrustee upon nomination of the income beneficiary and remaindermen.