OPINION OF THE COURT
Alfred D. Lerner, J.
This is a motion by defendants for summary judgment on the grounds that there are no triable issues of fact and that the insurance policy on which plaintiff’s claims are based is void and unenforceable as a matter of law.
On appeal from various orders of Special Term and Trial Term, the Appellate Division directed the parties to complete all discovery within a specified time and placed the action on the Trial Calendar for a date certain, subject to the direction of the Justice then presiding. (National Superlease v Reliance Ins. Co., 103 AD2d 737.)
As a preliminary procedural objection, plaintiff argues that in view of the order of the Appellate Division, defendants’ motion for summary judgment is improper. The terms of the Appellate Division order do not, however, foreclose summary judgment nor is the motion untimely. A motion for summary judgment made *989 on the eve of trial is not of itself a sufficient reason for denying the motion where delay is caused by the necessity to complete depositions and the motion has merit. (Rule Resources v Reliance Group, 49 NY2d 587.)
Plaintiff (hereinafter Superlease) was the named insured under a policy of automobile liability insurance issued by defendants (hereinafter Reliance). In its complaint, Superlease seeks a declaration that the policy is in full force and effect, specific performance of the policy, damages based on Reliance’s alleged fraud and breach of contract, punitive damages and rescission. Superlease alleges that it is a domestic corporation in the business of leasing automobiles, limousines and livery vehicles which were insured by the Reliance policy. It is further alleged that notwithstanding the specific provision of the policy that, except for nonpayment, the policy could not be canceled, changed or nonrenewed, Reliance defaulted in its performance and has purported to terminate the policy. Superlease contends that it has fully performed under the terms of the contract and has already paid more than $600,000 in premiums to Reliance. No claim is made for the return of any unearned premiums after cancellation of the policy.
Reliance denies the material allegations of the complaint and has asserted affirmative defenses of fraud and illegality and counterclaimed for unpaid premiums and damages. Reliance’s counterclaims (against Superlease and additional defendants on the counterclaims) and a third-party action have been severed from the main action. It is Reliance’s position that Superlease, in conjunction with a related corporate entity, National Motorist Club, Inc., engaged in a series of sham and illegal transactions in order to obtain a fleet automobile policy for approximately 4,700 unrelated vehicle owners. Reliance contends that termination of the policy was justified since the aggregation of unrelated individuals under a single policy constitutes group casualty insurance in violation of the insurance laws of this State.
The legal issues raised by the Superlease policy must be viewed in the dual contexts of New York’s strict regulation of the insurance industry and the requirement of compulsory automobile insurance. Since insurance affects the public interest, it is subject to specific statutes and regulations. (Olivia v Government Employees Ins. Co., 46 AD2d 437, 443; Matter of B. & R. Excess Corp. v Thacher, 37 Misc 2d 307, affd 18 AD2d 1137.) In the Insurance Law, the Legislature has specified the types of insurance which may be issued in this State. (Insurance Law § 1113 [formerly § 46].) While group life insurance (Insurance *990 Law § 4216 [formerly § 204]), group accident and health insurance (Insurance Law § 4235 [formerly § 221]), and group annuity contracts (Insurance Law § 4238 [formerly § 223]) are authorized, group coverage for automobile liability insurance is not an enumerated permissible form of insurance. (Matter of Freshstart Brokerage v Corcoran, Sup Ct, NY County June 8, 1984, index No. 4860/84.) Where a statute “describes the particular situations in which it is to apply, ‘an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded’ (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240).” (Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208-209.)
Under New York’s compulsory automobile insurance statutes, an owner’s policy of liability insurance is required for the registration of either a private or for hire vehicle. (Vehicle and Traffic Law arts 6, 8.) A review of the underlying transactions is necessary to determine the merit of Reliance’s claim that the Superlease policy constituted an unauthorized group automobile liability policy for unrelated vehicle owners.
Based on those undisputed facts which were elicited during disclosure and the documents submitted by the parties on the motion for summary judgment, it appears that Superlease was formed in 1983 for the purpose, according to its president and sole stockholder, Nicholas Neu, of acquiring an ownership interest in vehicles owned by members of the National Motorist Club and then leasing these vehicles back to the members. The National Motorist Club (hereinafter NMC) is also owned and operated by Mr. Neu. Its purpose was to provide certain motorist services to members in return for an annual membership fee. Among the benefits offered to NMC members was automobile liability insurance.
In order to obtain the benefits of membership offered by NMC, a member was required to execute a “short form trust agreement” which purported to transfer “equitable title” to the member’s vehicle to Superlease for a one-year period. Simultaneously with the execution of the trust instrument, Superlease entered into a written lease with the member which leased back “equitable title” to the member’s vehicle for the same one-year period. At the expiration of one year, both the lease and trust agreement terminated, returning “equitable title” to the NMC member.
As a condition of the lease, the NMC member lessee was required to obtain insurance coverage either from an insurer of the lessee’s choice at the lessee’s expense or elect to be named as *991 an additional insured under the policy issued by Reliance to Superlease, at no additional charge. The fees paid by members to NMC were considered full payment for both the lease and the insurance coverage. These fees were set by NMC at rates 20-25% below insurance premiums for comparable coverage.
All NMC members who assigned “equitable title” chose to be named as additional insureds under the Superlease policy and were furnished with certificates of insurance to permit registration of their vehicles with the Commissioner of Motor Vehicles. In the event NMC fees were not paid, a notice of cancellation of insurance Was issued to the delinquent member.
The policy referred to in the lease agreement was secured from Reliance by Superlease, as an automobile leasing company, at a premium base rate calculated for a fleet of 747 limousines and 25 private passenger automobiles. At the time of the policy’s issuance, Superlease owned no vehicles and all vehicles which it subsequently leased belonged to NMC members. The policy listed Superlease as the insured and covered any vehicle leased to others for a period of 12 months or more in which the lease agreement required the lessor to provide primary coverage. At the time of the policy’s cancellation, 4,700 vehicles were insured under the master policy at rates below premium levels that would be charged directly by an insurer to an individual owner of a vehicle. Of the 4,700 insured vehicles, approximately 80% were “for hire” or gypsy cabs.
The basis of Superlease’s claim to a valid policy is its alleged insurable ownership interest in the motor vehicles of NMC members acquired through the assignment of “equitable title” in the trust agreement. The trust agreement and lease, simultaneously entered into, must be construed together since they form a single, integrated transaction. (Matter of Glaser, 19 AD2d 354, 356, affd 14 NY2d 895.) The court will look to the substance, rather than the form, of the agreements in determining their legal effect. (See, e.g., People v Roschli, 275 NY 26; Newman v Dore, 275 NY 371.)
An analysis of the “short form trust agreement” and lease reveals that they fail to provide Superlease with a valid ownership interest in the insured vehicles. Without such an insurable interest, the Superlease policy constitutes group liability insurance for unrelated vehicle owners in direct violation of the public policy expressed in the Insurance Law.
The four elements necessary for the creation of a trust are “(1) a designated beneficiary; (2) a designated trustee not the beneficiary; (3) a fund or other identifiable property; and (4) the actual *992 delivery of the fund or other property to the trustee with the intention of passing legal title thereto to him as trustee”. (Matter of Fontanella, 33 AD2d 29, 30; 61 NY Jur, Trusts, § 52.) A valid trust involves “a separation of the legal and equitable interests in property. Where a single individual has the whole legal interest and the whole beneficial interest, there is no trust.” (2 Scott, Trusts § 99.)
In the transactions at issue, while the trust agreement* purports to convey the NMC member’s beneficial interest in his motor vehicle to Superlease (with a presently exercisable power of appointment in Superlease for the use of the vehicle), the lease retransfers to the NMC member the same “equitable title” devised in the trust. Thus, for the one-year term of both the trust and lease, all incidents of ownership, including the legal and beneficial interests, remained with the NMC member. Such an illusory transfer will not be enforced. (Burns v Turnbull, 266 App Div 779, affd 294 NY 889; see, Matter of Seidman, 88 Misc 2d 462, mod on other grounds 58 AD2d 72.)
As an alternative theory to sustain the validity of the policy, Superlease argues that the trust agreement and lease created an insurable security interest, known as a trust receipt, in the NMC members’ motor vehicles. However, a trust receipt, now covered by UCC article 9 (UCC 9-102 [2]), has no application to the transactions at issue. The trust lease device made no advances to enable the NMC member to acquire rights in his motor vehicle (UCC 9-107 [b]) and no legal title was received by Superlease as security. (53 NY Jur, Secured Transactions, § 37.) A secured party, moreover, is not an owner under Vehicle and Traffic Law §§ 128 and 388 {Dairylea Coop, v Rossal, 64 NY2d 1), and is, therefore, without an insurable interest as contemplated by New York’s compulsory automobile insurance requirement.
*993 Since the insurance contract is in contravention of the Insurance Law, it is against public policy and unenforceable by Superlease. (Peabody, Jr. & Co. v Travelers Ins. Co., 240 NY 511.) The right of parties to a contract to dictate its terms is “limited when the contract is a policy of casualty insurance required by law as a condition for licensing motor vehicles.” (Insurance Co. v Godwin, 46 AD2d 154, 159.) Therefore, although the Superlease policy specifically provides that it may not be canceled except for nonpayment, Reliance may not be held to its terms and no rights are violated by repudiation. As was stated by the Court of Appeals in the Peabody case, “[t]he law favors obedience to its statutes rather than the keeping of contracts in violation of them. The law does not recognize that as a breach which is in obedience to a statute. Whatever may have been the motives of the defendant in repudiating [the contract] was entirely immaterial. Even if it acted wilfully and maliciously, as the plaintiff alleges, it would not be liable provided it had a just and rightful purpose to serve.” (Peabody, Jr. & Co. v Travelers Ins. Co., supra, p 519.)
Questions of estoppel or waiver do not raise triable issues of fact since these doctrines may not be relied upon to enforce a contract which violates public policy. (Cf. Millington v Rapoport, 98 AD2d 765; Holmes v Nationwide Mut. Ins. Co., 40 Misc 2d 894, affd 19 AD2d 947.) Having aided in insuring over 4,000 motor vehicles, Superlease may not, in addition, seek the rescission or cancellation of the policy ab initia. Prospective cancellation is the only available means of terminating a policy of automobile liability insurance. (Vehicle and Traffic Law § 313; Middlesex Ins. Co. v Carrero, 103 AD2d 694; Olivio v Government Employees Ins. Co., 46 AD2d 437, supra; Aetna Cas. & Sur. Co. v Garrett, 31 AD2d 710, affd 26 NY2d 729; Teeter v Allstate Ins. Co., 9 AD2d 176, affd 9 NY2d 655.)
Accordingly, the motion is granted and summary judgment is awarded Reliance dismissing the second, third, fourth, fifth and sixth causes of action and declaring, with respect to the first cause of action, that Superlease may not enforce the policy.

 The following is a complete text of the agreement:
“short form trust agreement “I _ as (Settlor) do by this instrument devise in trust myself as trustee for the period of one year to national superlease inc. as beneficiary all of my beneficial interest in my_automobile. I include year make within this devise a power of appointment vested in national superlease inc. as beneficiary which shall be presently exercisable for the period of this agreement and allow for appointment of the use of the aforementioned vehicle.