[645 NYS2d 481]

In the Matter of AETNA CASUALTY AND SURETY COMPANY, Appellant, v COUNTY OF NASSAU et al., Respondents.

Second Department, June 17, 1996

**APPEARANCES OF COUNSEL**

*Lambert & Weiss,* New York City *(Arthur N. Lambert, Monroe Weiss* and *Stephen H. Marcus* of counsel), for appellant.

*Owen B. Walsh, County Attorney* of Nassau County, Mineola, and *Plunkett & Jaffe, P. C.,* White Plains *(Kevin J. Plunkett* and *Richard J. Lambert* of counsel), for respondents. (One brief filed.)

*Hollander & Associates, P. C.,* New York City *(Larry B. Hollander, Sandra S. Jackson* and *Ralph J. Reiseman* of counsel), for New York Surety Company and Contractors Casualty and another, *amicus curiae.*

*Ernstrom & Dreste,* Rochester *(J. William Ernstrom* and *Theodore M. Baum* of counsel), for Surety Association of America, *amicus curiae.*

### OPINION OF THE COURT

RITTER, J. P.

This appeal concerns the power of the respondents (hereinafter collectively Nassau County) to prohibit the petitioner, Aetna Casualty and Surety Company (hereinafter Aetna), from acting as a surety on any competitively bid public contract in Nassau County during the period Aetna is in default on a surety bond.

In 1992, Nassau County awarded a contract to Manshul Construction Corporation (hereinafter Manshul) for the construction of two buildings at Nassau County Community College. Aetna was the surety for the project. In May 1994, after a prior declaration of default by Nassau County had been settled by stipulation between the parties, Nassau County again declared Manshul in default of the contract. Manshul commenced a proceeding pursuant to CPLR article 78 to challenge the declaration which resulted in a second stipulation of settlement between the parties. However, this time the stipulation set forth a schedule of milestone dates by which work was to be completed and the Supreme Court retained jurisdiction over the proceeding for purposes of determining whether the work was progressing as scheduled. Ultimately, a dispute arose concerning the progress of the work and a hearing was ordered. After the hearing, the court, in a decision dated November 5, 1994, found that Manshul had failed to substantially accomplish the work as set forth in the stipulation and by order and judgment dated December 6, 1994, ordered Aetna, as surety, to complete the project. However, although Aetna did continue certain work on the project, Nassau County determined that the work did not comply with the terms of the contract and, by letter dated January 13, 1995, Nassau County declared Aetna in default of its obligations as surety. Aetna

concedes that the instant proceeding does not challenge the propriety of Nassau County's declaration that it was in default. Thus, the issue is not before this Court on appeal *(see, Lavine v Lavine,* 127 AD2d 566).

Pursuant to Nassau County Charter § 2206, which, *inter alia,* prohibits Nassau County from contracting with any party in default on a bond issued to it, Nassau County, by letter dated January 19, 1995, notified Aetna and potential bidders that it would no longer accept Aetna as surety on any publicly bid contract. In response, Aetna commenced this proceeding pursuant to CPLR article 78 arguing that Nassau County's actions violated the Insurance Law (specifically, Insurance Law § 1111) and that Nassau County was exercising powers granted exclusively to the Superintendent of Insurance. The Supreme Court denied Aetna's petition and dismissed the proceeding holding, *inter alia,* that Insurance Law § 2504 (c), which empowers certain entities such as Nassau County to make determinations concerning the "sufficiency" of a bond, authorized the actions taken by Nassau County. We now affirm.

Pursuant to Insurance Law § 1111 (b) (1): "Whenever by any law of this State a bond, undertaking, recognizance, guaranty or like obligation is required, permitted, authorized or allowed, or the performance of any act, duty or obligation, or the refraining from any act, is required, permitted, authorized or allowed to be secured or guaranteed, such bond or like obligation, or such security or guaranty, may be executed by any insurance company authorized to do in this state the business of executing such instruments and empowered by its charter to execute them. The insurer's execution of such instrument * * * shall be accepted as, and in all respects shall be, a full compliance with every law or other requirement, now or hereafter in force, that any such obligation be given or accepted or that it be executed by one or more sureties, or that such sureties be residents, householders or freeholders, or possess any other qualifications".

Further, Insurance Law § 1111 (c) states that a certificate of qualification issued by the Superintendent of Insurance (hereinafter the Superintendent) to a surety "shall be conclusive evidence" of the surety's "qualification, and its sufficiency under any law of this state". Aetna argues that the broad and absolute sweep of the language of this section mandates that Nassau County accept a bond issued by any qualified surety and reveals a legislative intent to repose the power to determine whether a surety is qualified to do business in the

State solely with the Superintendent. Further, that the Insurance Law as a whole evinces a legislative intent to occupy the entire field of surety regulation and, therefore, preempts any local legislation. Thus, Aetna argues that because it is authorized to do business in the State and has been issued a certificate of qualification by the Superintendent, Nassau County was without the power or authority to preclude it from acting as a surety within Nassau County while in default as surety on the Manshul contract.

To the contrary, Nassau County argues that the language of Insurance Law § 1111 (b) and (c), when properly interpreted, concerns only the financial solvency and capability of a surety and does not evince an intent to preempt local legislation. Further, it argues, even if Insurance Law § 1111 could be read expansively, it must be read in conjunction with the later-enacted Insurance Law § 2504 (c), which states: "This section shall not, however, prevent the exercise by such officer or employee on behalf of the State or such public corporation or public authority of its right to approve the form, *sufficiency,* or manner of execution, of surety bonds or contracts of insurance * * * selected by the bidder to underwrite such bonds or contracts" (emphasis supplied). The County argues that it was merely exercising the authority granted to it by Insurance Law § 2504 (c) to determine the "sufficiency" of Aetna's bond to effectuate the mandate of Nassau County Charter § 2206.

There is a paucity of case law concerning the sections of the Insurance Law at issue. Further, the Insurance Law does not define the word sufficiency (*see,* Insurance Law § 107) and it has not been construed by case law. Accordingly, in the absence of controlling authority, this Court must interpret the statutes at issue to give effect to the legislative intent behind their enactment:

"It is a fundamental rule of statutory construction that a statute or legislative act is to be construed as a whole, and that all parts of an act are to be read and construed together to determine the legislative intent. So, in construing a statute the court must take the entire act into consideration, or look to the act as a whole, and all sections of law must be read together to determine its fair meaning. Statutory language, however strong, must yield to what appears to be intention and that is to be found not in the words of a particular section alone but by comparing it with other parts or provisions of the general scheme of which it is part. * * *

"In seeking the legislative intent, words absolute in themselves and the broadest and most comprehensive language may

be qualified and restricted by reference to other parts of the statute or to other acts on the same subject, or by the facts to which they relate, and though a statute is divided into many sections, each section is to be construed in connection with the others, and each is to be kept in subservience to the general intent of the whole enactment" (McKinney's Cons Laws of NY, Book 1, Statutes § 97).

Here, applying these rules of construction, we find that the broad and absolute language of Insurance Law § 1111 (b) is circumscribed by its historical origins and the Legislature's intent in enacting it.

In response to a query by Aetna, the Superintendent issued an informal opinion letter, not binding on this Court, wherein he traced the history of Insurance Law § 1111 as follows:

"Section 1111 of the Insurance Law was derived from Section 1 of Chapter 720 of the Laws of 1893 as amended by Chapter 178 of the Laws of 1895. Under the earlier versions of the statute, authorized corporate sureties were given the same status as individual sureties. That is where, for example, a law required a homeowners bond, an authorized corporate surety bond 'shall be accepted' as the equivalent to the homeowner's bond. However, under the former version of the statute, a court or other public authority had the discretion to investigate the underlying solvency of an authorized surety company before accepting its bond.

"The statute was amended in 1913 to mandate that courts and governmental agencies, in passing on the *financial ability* of a surety to meet its obligations, 'shall accept the certificate of the superintendent as to the solvency of the surety.' (Ed. note, section 181 of the Ins. L. 1913). This amendment ended the court's examination of an authorized surety's finances each time the surety issues a judicial bond.

"Section 1111 (c) now states that the certificate of qualification issued to a surety is conclusive evidence that a surety is solvent—that is, that the company's capital and surplus comply with the requirements of the insurance law. In essence, the certificate of qualification ensures that the surety has sufficient assets to meet its obligation under the bond".

The Superintendent's analysis finds support both in case law and statute *(see, Matter of Landau,* 230 App Div 308; *Timal v Kiamzon,* 164 Misc 2d 159; *City of New York v Britestarr Homes,* 150 Misc 2d 820; *Recon Car Corp. v Chrysler Corp.,* 129 Misc 2d 1087; *Schlesinger v Kaufman,* 233 NYS2d 918; CPLR

2507; *see also,* Insurance Law § 1102 [e]; §§ 1115, 1219; arts 13, 14). Placing Insurance Law § 1111 (b) and (c) in their historical context, we find that, despite the apparent broad and absolute language used, the legislative intent was to address the nature of the issuer of the bond and the financial solvency and capability of a surety, not to preempt any and all special and local laws concerning sureties. Thus, the actions taken by Nassau County were not in violation of Insurance Law § 1111.

Further, contrary to Aetna's assertions on appeal, the Insurance Law does not otherwise evince a legislative intent to occupy the entire field of surety regulation and to preempt any special or local legislation as to sureties. For example, as discussed *supra,* despite the apparent broad and sweeping language of Insurance Law § 1111 (b) (1), the section does not supersede and preempt any and all laws concerning the issuance of surety bonds. Further, although the acts which Aetna is alleged to have committed are arguably prohibited by Insurance Law article 26, the remedies granted to the Superintendent by that section, i.e., fines pursuant to Insurance Law § 109 and injunctions pursuant to Insurance Law § 2406, are expressly stated to be in addition to any other remedy provided by law *(see,* Insurance Law § 109 [b]; § 2409). Thus, the doctrine of preemption does not apply *(see, Dougal v County of Suffolk,* 102 AD2d 531, *affd* 65 NY2d 668).

In any event, even if Insurance Law § 1111 could be read expansively, Insurance Law § 2504 (c) expressly reserves to certain entities such as Nassau County the power to determine the "sufficiency" of a bond. Here, the actions taken by Nassau County were within the scope of the power granted by Insurance Law § 2504 (c).

As noted, neither the Insurance Law nor case law has defined the term "sufficiency". Thus, the word must be interpreted by this Court. As a starting point, the word sufficient has been defined as: "marked by quantity, scope, power, or quality to meet with the demands, wants, or needs of a situation or of a proposed use or end" (Webster's Third New International Dictionary 2284). Here, applying this definition, a plain reading of the word "sufficiency" would allow the type of determination made in this case, in that Nassau County is clearly concerned with the quality of Aetna's bonds. Indeed, the County has not questioned Aetna's financial solvency and capability. Moreover, such an interpretation comports with and gives effect to the important public policy role charter provisions play in protecting the interests of the property owners and taxpayers

of a given area on publicly bid contracts *(see, Matter of Marvec-All State v Purcell,* 110 Misc 2d 67, *affd* 87 AD2d 593; 10 McQuillin, Municipal Corporations § 29.29 [3d rev ed]). Indeed, it would appear fundamentally unfair to compel Nassau County, which is responsible for over a million citizens, to accept a bond from a surety who, although able to pay, is already in default on a bond that it had previously issued. This is especially true here, where the alleged damages from the default exceed $3,000,000.

Moreover, Aetna's proffered interpretation—that the term "sufficiency" should be construed to mean "amount"—is unpersuasive. First, such an interpretation would not comport with a plain reading of the statute, in that the term "sufficiency," which is a much more expansive term, would be, at best, an awkward substitute for the much simpler and clearer "amount". Moreover, because the amount of the bond is an integral part of the bid and a bid that was not properly bonded would not be accepted *(see,* State Finance Law § 137 [1]; General Municipal Law § 103 [1]), granting a county the power to determine the amount of a bond would be, in essence, meaningless *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 98 [meaning must be given, if possible, to every word of statute]). Finally, although the Superintendent is also given the power to determine the "sufficiency" of a surety pursuant to Insurance Law § 1111 (c), such a determination is expressly limited to being conclusive evidence of "the company's qualification, and its sufficiency under any *law of this state* as surety or guarantor, and of *the propriety of accepting and approving it as such*" (emphasis supplied). Here, Nassau County did not find that Aetna was in violation of a State law. Moreover, giving Insurance Law § 1111 (c) such a limited interpretation gives effect to the requirement that statutory words be "interpreted with reference to the scheme of the entire section" (McKinney's Cons Laws of NY, Book 1, Statutes § 97) and that "[a]ll parts of a statute must be harmonized with each other as well as with the general intent of the whole statute" (McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]).

Aetna also argues that Nassau County violated Insurance Law § 2504 (a) (1), which prohibits a public corporation or public authority from requiring a bidder on a publicly bid contract "to make application to any particular insurance company, agent or broker". However, the disqualification here was pursuant to law and was neither a literal nor the functional equivalent of a direction to parties bidding on public contracts to ap-

ply to a particular insurance company, agent, or broker. Indeed, Insurance Law § 2504 (a) was enacted to protect the rights of the contractor, not the surety *(see, Matter of Professional Ins. Agents v New York State Ins. Dept.,* 197 AD2d 258). Thus, Nassau County did not violate Insurance Law § 2504 (a).

Finally, Aetna argues that it is not subject to Nassau County Charter § 2206 because it neither bids for nor seeks the award of a public contract. However, we find this argument to be sophistry. The relationship between the surety and the principal of a contract is one of privity and is contractual in nature *(see,* 4 New York Insurance Law § 52.02 [2]). Thus, the Charter provision at issue was permissibly applied to Aetna.

We have considered Aetna's remaining contentions and find them to be without merit.

Accordingly, the judgment appealed from should be affirmed.

FRIEDMANN, J. (dissenting). Applying traditional principles of statutory construction and rules of preemption, and in view of certain compelling public policy considerations, I consider that the County of Nassau has usurped the authority of the New York State Commissioner of Insurance in declaring Aetna Casualty and Surety Company to be ineligible to serve as surety on any Nassau County contracts. The County has taken this unauthorized step in order to coerce Aetna into paying the County a sum in excess of $3,000,000, alleged to be owed to it because of a purported "default" by Aetna on a building project at the Nassau County Community College in January 1995.

In my opinion, Nassau County's proper remedies for its dissatisfaction with Aetna were to file a complaint formally requesting that the Superintendent of Insurance investigate the surety and revoke its certification pursuant to Insurance Law § 1111 (d); and/or to sue Aetna for money damages for breach of contract.

I

According to the plain language of Insurance Law § 1111 (a), the State Superintendent of Insurance "may" issue to an insurer "a certificate of qualification" authorizing said insurer to do business in New York State, *if* the Superintendent "finds that * * * the insurer is solvent, responsible and otherwise qualified to make policies or contracts of the kind required." Thereafter, the insurer's certification may be revoked—but only by the Superintendent, and only after notice and a hearing (Insurance Law § 1111 [d]).

So long as the insurer is certified, Insurance Law § 1111 (b) (1) provides that, "Whenever by any law of this state a bond * * * is required, permitted, authorized or allowed * * * such bond * * * may be executed by any insurance company authorized to do in this state the business of executing such instruments and empowered by its charter to execute them. The insurer's execution of such instrument * * * *shall be accepted as, and in all respects shall be, a full compliance with every law or other requirement, now or hereafter in force,* that any such obligation be given or accepted" (emphasis supplied).

In addition, according to Insurance Law § 1111 (c), "[s]uch certificate * * * *shall be conclusive evidence, as of its date and thereafter until revoked, of either the insurer's qualification to issue the policy, contract of insurance or surety bond, if issued pursuant to subsection (a) hereof, or the company's qualification, and its sufficiency under any law of this state as surety or guarantor, and of the propriety of accepting and approving it as such, if issued pursuant to subsection (b) hereof, and this certification shall be in lieu of any justification required of the insurer by any law of this state or any requirement pursuant thereto*" (emphasis supplied).

The language of these last sections is clear and unambiguous, and so does not require "interpretation" *(see,* McKinney's Cons Laws of NY, Book 1, Statutes §§ 76, 92 [b]; §§ 94, 177, 193; *see, e.g., Matter of Syquia v Board of Educ.,* 80 NY2d 531; *Matter of Podolsky v Narnoc Corp.,* 196 AD2d 593). The construction is mandatory—not precatory or discretionary. In other words, by choosing the peremptory word "shall" over the permissive "may," the Legislature has signalled its intent that during an insurer's period of certification, the company *must* be deemed "qualified" and "sufficient" to issue bonds; and any such instrument executed by it *must* "be accepted as, and in all respects shall be, a full compliance with every law or other requirement, now or hereafter in force." *(Id.,* § 1111 [b] [1].)

## II

Not only does Insurance Law § 1111 make clear that a parochial entity like the County of Nassau has no power to "decertify" Aetna, but Insurance Law § 2504, which the County invokes as authorizing its action, in fact does no such thing. Section 2504 is an antitrust provision, which generally forbids all public officers and corporations from requiring that any bidder for a competitively bid public building or construction contract select "any particular insurance company, agent or

broker" for the procurement of a surety bond (Insurance Law § 2504 [a] [1]). Subdivision (b) directs that no public officer is permitted to obtain a surety bond that could be "procured by the bidder, contractor or subcontractor" himself; while subdivision (c), cited by the County here, provides: "This section shall not, however, prevent the exercise by such officer or employee on behalf of the state or such public corporation or public authority of its right to approve the form, sufficiency, or manner of execution, of surety bonds or contracts of insurance furnished by the insurance company selected by the bidder to underwrite such bonds or contracts." By its plain language, this enactment empowers a public authority to disapprove of the "form, sufficiency, or manner of execution" of a *particular bond* "furnished by the insurance company *selected by the bidder.*" (Emphasis added.) This exception to the general antitrust provisions of section 2504 is clearly not at issue in the instant case. Indeed, to the extent that the County's action disqualifies Aetna from acting as surety for any contractor bidding for Nassau County projects until Aetna satisfies its $3,000,000 "default," Nassau County has artificially and "coercively" narrowed the field of competing insurers—in violation of the very antitrust provision that it invokes to justify its behavior *(see, e.g., Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187, 192-193; *Matter of Construction Contrs. Assn. v Board of Trustees,* 192 AD2d 265; *see also,* 15 USC § 1011 *et seq.;* General Municipal Law § 103).

### III

Nassau County places its principal reliance upon Nassau County Charter § 2206, entitled "Execution of Contracts," which governs "[a]ll contracts * * * made and executed by the county executive". The sentence invoked by the County reads: "No bid shall be accepted from, or a contract awarded to, any person who is in arrears to the county upon debt or contract or who has defaulted as surety or otherwise upon any obligation to the county".

While the County admits that this provision is awkwardly drafted, I would submit that it was simply not drafted to cover this situation. In other words, Aetna clearly does not "bid" for public "contracts"; and the County Executive does not execute any contracts with sureties. The County is therefore trying to extend a provision enacted to govern the municipality's first-hand contractual relations with the contractors, builders, materialmen, et al. who do bid on public projects, to the

entirely distinct matter of whether Aetna is "qualified" to issue bonds when "selected by the bidder to underwrite such bonds or contracts" (Insurance Law § 2504 [c]).

It is well settled that a litigant cannot unilaterally construe a legislative enactment to encompass a situation that it actually does not address (see, e.g., *Pajak v Pajak,* 56 NY2d 394; *People v Graham,* 55 NY2d 144, 153). Here, whatever authority Nassau County Charter § 2206 may give the County in its dealings with bidders for public contracts, it does *not* empower the County to interfere with those bidders' freedom to contract with a surety that has been "certified" by the State Superintendent of Insurance, and whose presence in the surety pool may serve to keep the costs of underwriting more competitive (see, General Municipal Law § 103; *Jered Contr. Corp. v New York City Tr. Auth., supra; Matter of Construction Contrs. Assn. v Board of Trustees, supra).*

I do not quarrel with the County's contention that its Charter is a "general" law, enjoying equal status with the Insurance Law, (see, e.g., L 1936, ch 879, § 2206). Nor do I dispute the County's suggestion that there is no real conflict between Insurance Law § 1111 and Nassau County Charter § 2206. But this is because section 2206, when properly construed, does *not* grant the County the authority that the County pretends it does in this proceeding.

By misconstruing Nassau County Charter § 2206 to mean that Nassau County can, in effect, decertify a surety that has been certified by the State Superintendent of Insurance, the County has in effect passed a "local" law that deviates from the general law of the State without following the proper procedures for amending county charters laid out in Municipal Home Rule Law § 37.

In addition, even had the County followed the procedures set out in Municipal Home Rule Law § 37, it could not have passed such a "local law" because Municipal Home Rule Law § 34 (1) and § (3) (d) expressly forbid such an enactment. According to the latter provisions: "The legislature hereby imposes the following limitations on the powers of counties to * * * amend county charters and charter laws * * * (3) Except in accordance with provisions of this chapter or with other laws enacted by the legislature, a county charter or charter law shall not supersede any general or special law enacted by the legislature * * * (d) Insofar as it relates to a function, power or duty of the state or of any officer or agency thereof".

## IV

Finally, in addition to the foregoing, traditional principles of preemption prevent the County from converting Nassau County Charter § 2206 from its character as a "general" law into a new "local" law, in conflict with the Insurance Law, by the surreptitious expedient of reinterpreting the provision as a regional license to decertify any surety that displeases it.

It is well established that there are two firm restrictions on a municipality's exercise of its rights to home rule: firstly, a municipality may not enact local legislation that is inconsistent with constitutional or general law; and secondly, a municipality may not exercise its police power when the Legislature has preempted the area of regulation (see, e.g., Matter of Penny Lane/E. Hampton v County of Suffolk, 191 AD2d 19, 23; cf., Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 97-98; see generally, 5 McQuillin, Municipal Corporations § 15.20, at 101-104 [3d rev ed]). The County's misinterpretation of County Charter § 2206 in the matter at bar violates both of these limitations on the right to home rule (see, e.g., Municipal Home Rule Law § 33 [2]; § 34 [1], [3]).

In the first place, the County's reading of Nassau County Charter § 2206 offends against fundamental notions of due process, because it enables the County to summarily disqualify an otherwise qualified insurer following a unilateral declaration of "default," without full notice and a hearing.

In addition, the County's construction of section 2206 infringes upon constitutional principles of freedom of contract affecting entities that are not parties to this dispute. It should be noted that "blacklisting" is on its face a repugnant way of penalizing an entity for not cooperating with government in a particular matter. It is also a method of punishment not likely to be approved by any legislation under our Constitution— particularly where, as here, innocent contractors are being needlessly punished as well, as they are being foreclosed from contracting with Aetna on County projects because of a quarrel that does not concern them. I say "needlessly" because the County has perfectly adequate, more appropriately tailored remedies at its disposal, in the form of a lawsuit for breach of contract, and a formal complaint to the State Superintendent of Insurance requesting discipline of Aetna by removal of the company from the State's surety pool.

Finally, the State Legislature has preempted the field of insurance law (see, e.g., Albany Area Bldrs. Assn. v Town of Guil-

*derland,* 74 NY2d 372, 377; *Wambat Realty Corp. v State of New York,* 41 NY2d 490; *cf., Jancyn Mfg. Corp. v County of Suffolk, supra).*

Generally speaking, the Legislature need not express its intent to preempt a particular area of law *(Jancyn Mfg. Corp. v County of Suffolk, supra,* at 98; *Albany Area Bldrs. Assn. v Town of Guilderland, supra,* at 377). Its decision to do so may be inferred from the nature of the subject matter being regulated; and from the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given field *(see, e.g., ILC Data Device Corp. v County of Suffolk,* 182 AD2d 293, 305, *appeal dismissed* 81 NY2d 952; *see also, Matter of Radich v Council of City of Lackawanna,* 61 NY2d 652; *Hotel Dorset Co. v Trust for Cultural Resources,* 46 NY2d 358; *Wambat Realty Corp. v State of New York, supra; Consolidated Edison Co. v City of New Rochelle,* 140 AD2d 125). "A comprehensive, detailed statutory scheme, for example, may evidence an intent to preempt" *(Albany Area Bldrs. Assn. v Town of Guilderland, supra,* at 377). Where the State has clearly evinced a desire to preempt an entire field, any overlapping local regulation should be struck down, as tending to inhibit the operation of the State's transcendent scheme and thwart the implementation of the State's overriding policies *(see, Albany Area Bldrs. Assn. v Town of Guilderland, supra,* at 377; *Jancyn Mfg. Corp. v County of Suffolk, supra,* at 97; *Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99; *Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347; *Dougal v County of Suffolk,* 102 AD2d 531, *affd* 65 NY2d 668; *cf., Incorporated Vil. of Nyack v Daytop Vil.,* 78 NY2d 500; *New York State Club Assn. v City of New York,* 69 NY2d 211, 221-222, *affd* 487 US 1).

It has frequently been held that the regulation of insurance and insurance companies implicates public policy concerns of State-wide magnitude, precluding local interference *(see, e.g., National Superlease v Reliance Ins. Co.,* 126 Misc 2d 988, *affd* 123 AD2d 608, *lv denied* 69 NY2d 611; *Hearthstone Ins. Co. v Village of Penn Yan,* 53 Misc 2d 359, 360; *Matter of People [International Workers Order],* 199 Misc 941, *affd* 280 App Div 517, *affd* 305 NY 258, *cert denied* 346 US 857). The State's intention to preempt the entire area of insurance law may be deduced from its promulgation of comprehensive legislation governing the field as a whole *(compare, e.g., Ba Mar v County of Rockland,* 164 AD2d 605, 612; *People v Town of Clarkstown,* 160 AD2d 17; *Oil Heat Inst. v Town of Babylon,* 156 AD2d 352).

As one feature of that centralized body of legislation, Insurance Law § 1111 provides that *only* the State Superintendent of Insurance has the power to decertify a surety (and then, only following notice and a hearing). In consequence, any regional enactment purporting to give a local official comparable authority would perforce be preempted by the "general" law of the State *(see, e.g., Matter of Landau,* 230 App Div 308; *cf., Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs,* 74 NY2d 761; *Uniformed Firefighters Assn. v City of New York,* 50 NY2d 85).

This result is only sensible, as there is a conspicuous need for State-wide uniformity in the regulation of insurance. Without it, each of New York's 62 cities, 62 counties, 932 towns, and 557 villages (Local Government Handbook, NY Dept of State, 1987, at 8, 9, 61, 86, 87, 95-100) could enact its own system of standards and requirements. Were such an anarchic system to be countenanced, the resulting confusion would impede implementation of State policy *(see, e.g., Matter of Marcus v Baron,* 57 NY2d 862). In addition, the potential for collusive escalation in public works costs and other improprieties can hardly be imagined.

## V

For the foregoing reasons, I would reverse the order appealed from, grant Aetna's petition, and direct the respondent County to rescind its refusal to accept bonds from Aetna on any Nassau County project.

THOMPSON and SULLIVAN, JJ., concur with RITTER, J. P.; FRIEDMANN, J., dissents in a separate opinion.

Ordered that the judgment is affirmed, with costs.